720 So.2d 1186 (1998)
CAT'S MEOW, INC. d/b/a Cat's Meow, World Beat, Inc. d/b/a Lucky Pierres, St. Louis Bourbon E.C., Inc., d/b/a Wild Bar/River Rats
v.
CITY OF NEW ORLEANS THROUGH the DEPARTMENT OF FINANCE, Marina Kahn, Director.
No. 98-CA-0601.
Supreme Court of Louisiana.
October 20, 1998.
*1189 Avis M. Russell, Errol B. Conley, Deborah L. Wilson, Andrew P. Schmutz, New Orleans, for Applicant.
Justin A. Zitler, Mitchell J. Landrieu, New Orleans, for Respondent.
KNOLL, Justice.[*]
This case is before us on a direct appeal from a judgment of the district court declaring unconstitutional a series of ordinances by the City of New Orleans that exempted and imposed amusement taxes on certain events and admissions pursuant to enabling legislation in La.R.S. 4:41 et seq. See LA.CONST. art. V, § 5(D). Although the City Council subsequently amended the ordinances at issue after this appeal was filed to delete the alleged offending exemptions, we conclude that the recent amendments did not render this appeal moot. However, we are unable to reach the constitutional issues raised because we find the lower court prematurely determined the constitutionality of the ordinances without first determining if the City had the authority under its Home Rule Charter to enact the challenged ordinances and failed to find whether the plaintiffs had a right of action in enforcing the rights asserted. Accordingly, we remand this matter to the district court for further proceedings.

FACTS
This appeal arises out of a claim by three French Quarter establishments, Cat's Meow, Lucky Pierres, and Wild Bar/River Rats, and a nominal plaintiff, Douglass Castro ("plaintiffs"), seeking a declaratory judgment that the City of New Orleans' ("City") amusement tax[1] was unconstitutional because it was inconsistent with the state enabling legislation and because it violated the Equal Protection and Due Process Clauses of the Federal and State Constitutions, and demanding a refund of the amusement taxes paid.
The Louisiana Legislature in 1938 La.Acts 212, § 1 enacted La.R.S. 4:41-46 authorizing any parish or municipality of more than three hundred thousand inhabitants to levy a tax of not more than five percent on various amusements to provide funds for public and quasi-public charitable institutions operated by the parish or municipality.[2] Additionally, Act 212 exempted from the amusement tax several classes of admission, stating:
No tax shall be levied under this chapter with respect to any admission to any church fair, church card or lotto party, church lecture, church picnic, or any religious festival, all of the proceeds of which inure to the benefit of a religious institution. No such tax shall be levied with respect to any admission to any charitable benefit, the proceeds of which inure exclusively to the benefit of charitable institutions; nor with respect to any admission charged the students or members of the faculty of any school or university which charges an admission fee in connection with the activities of the school or university; nor with respect to any admission of ten cents or less charged children under the age of twelve.
Pursuant to these enabling statutes, the City of New Orleans on August 20, 1940, enacted Chapter 6, section 1 et seq. (now codified at Chapter 150, Article IV, sections 150-241 et seq.) of the Code of the City of New Orleans. As originally enacted, the City's ordinances were substantially similar to the State enabling statutes in both the amusements taxed and the amusements exempted. Beginning in 1967 and over the next thirty-one years, however, the City began to enact additional exemptions beyond those listed in La.R.S. 4:43. The subsequently added exemptions to the amusement tax included live entertainment events held in facilities with fixed seating capacity of at least 1,800; aerial gondolas operated under a city franchise; bona fide jazz establishments located within the Vieux Carre or operating as a sightseeing steamer, which is not licensed *1190 for gaming activities; purchases at any museum that receives $700,000 or less from admission fees; admission to the Audubon Zoo or Aquarium of the Americas; and live music performances.[3]See Chapter 150, Article IV, section 150-243 of the Code of the City of New Orleans.
In 1985, the Louisiana Legislature for the first time in Act 2, §§ 1-2 enumerated additional exemptions to the amusement tax. In La.R.S. 39:467, the legislature exempted from the amusement tax any event held in any domed stadium facility owned and operated by or for the state that has a seating capacity of at least seventy thousand. Additionally, La.R.S. 39:468 exempted any event conducted in any publicly-owned facility owned and operated by or for the state, provided that the local taxing authority first exempted such events from any tax it levied occurring in all publicly-owned facilities within its taxing jurisdiction.[4] Pursuant to these two enabling statutes, the City enacted sections 150-528 through 150-530 of the Code of the City of New Orleans that exempted from amusement taxes admission to publiclyowned facilities that had a seating capacity of least 2,000 and admission to the Louisiana Superdome for events other than trade shows at which the sale of goods is the primary purpose of the event.

PROCEDURAL HISTORY
Plaintiffs are three French Quarter establishments who are obligated to collect and remit to the City amusement taxes under Chapter 150, Article IV, sections 150-241 et seq., and a nominal plaintiff who paid the 5% amusement tax upon his admission to and upon his being served a refreshment at the Cat's Meow. On November 19, 1996, plaintiffs filed suit in the Civil District Court for the Parish of Orleans, asserting that the City's amusement tax was unconstitutional under the Federal and State Constitutions as enacted and as applied, seeking declaratory relief and seeking a refund of the amusement taxes paid.[5] Initially, plaintiffs asserted that the City's ordinances adding additional exemptions to the amusement tax were ultra vires because they were inconsistent with the exemptions enumerated by La.R.S. 4:43 and 39:467-68 and that the City was without authority from the state enabling statutes to grant additional exemptions. Additionally, plaintiffs alleged that the City's additional amusement tax exemptions violated the Due Process Clause and Equal Protection Clause of the Federal and State Constitutions as applied in that the City was arbitrary, capricious, and unreasonable in the manner in which it granted the exemptions. Plaintiffs further alleged that the ordinances violated equal protection because the amusement tax treated persons similarly situated in a dissimilar manner. Finally, plaintiffs asserted that the City's licensing and enforcement ordinances violated due process and equal protection as applied by the City's selective enforcement of their provisions.
The plaintiffs and the City filed cross motions for summary judgment and memoranda in support thereof. The lower court granted the plaintiffs' motion for summary judgment and denied the City's motion for summary judgment. In the Amended Reasons for Judgment, the lower court declared the City's amusement tax unconstitutional in part; however, the court held that the entire ordinance was unconstitutional "because not to do so would destroy the unchallenged remainder."
The lower court reasoned that while La. R.S. 4:43 and 39:467 were the only exemptions enacted by State law,[6] the City had enacted several "amendments which are inconsistent *1191 with the State enabling legislation." Additionally, the court found "no language in the legislation that allows the City to create other exemptions. The legislature's decision to specify particular exemptions is deemed to preclude the City from enacting any other exemptions." As for the City's ordinances relating to public facilities, the lower court found them inconsistent with State law in that the City's selective exemption scheme was "inconsistent with the all or nothing" State legislation. Based upon these written findings, "as well as those ably argued by the plaintiffs in their memorandum and oral argument," the lower court found that "the City must begin again within the parameters set forth by the legislation enacted by the Louisiana legislature."
Initially, the City argued that the lower court erred in holding the City ordinance unconstitutional and finding that it was prohibited from enacting additional exemptions not enumerated in the State legislation. The City maintained that pursuant to Article VI, Section 4 of the Louisiana Constitution of 1974 and the City's Home Rule Charter, it had the right to levy, impose, and collect any and all kinds and classes of taxes, provided the Louisiana Constitution does not prohibit the same. The City further urged that the plaintiffs lacked standing to maintain a cause of action because the amusement tax ordinance provides that the tax "shall not be assumed by the person or entity providing the amusement, [rather] it shall be mandatory on that person or entity to collect such tax from the purchaser for remittance to the Department of Finance." In support of their arguments, the City cites this Court's opinions in City of New Orleans v. Board of Commissioners, 93-0690 (La.7/5/94), 640 So.2d 237 (holding that every Home Rule Charter in existence before the adoption of the Louisiana Constitution of 1974 is limited only to the extent that the home rule is inconsistent with the 1974 Constitution); Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890 (La.1993) (holding that the City of New Orleans' tax on cable subscribers was not a "natural extension of the taxable amusements for which state law authorized the imposition of pre-1974 amusement taxes," and that Cox, as the entity ultimately responsible for payment of the amusement tax, lacked standing in an action for a refund because it in fact did not pay any portion of the tax itself, no subscribers joined in the action, and it did not appear as an authorized agent of the subscribers); Radiofone, Inc. v. City of New Orleans, 616 So.2d 1243 (La.1993) (noting that the City of New Orleans has broad taxing authority under the Home Rule Charter allowing it to levy taxes not prohibited by or inconsistent with the Louisiana Constitution and concluding that a 1990 City of New Orleans ordinance taxing telecommunications services and entities distinguishable from those taxed under the pre-existing 1968 ordinance, and thus not a "tax validly being levied by a political subdivision under prior legislative or constitutional authority on the effective date" of the Louisiana Constitution of 1974); Hildebrand v. City of New Orleans, 549 So.2d 1218 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990) (noting that "every existing home rule charter entity retained the powers, functions, and duties in effect at the time of adoption which were not inconsistent with the Constitution ") (emphasis in original); Acorn v. City of New Orleans, 377 So.2d 1206 (La.1979) (noting that the Louisiana Constitution and the legislature have granted to the City of New Orleans full and complete power to impose all kinds and classes of taxes, provided only that they are "not expressly prohibited by the Constitution of the State of Louisiana"); and Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104 (La.1959) (holding that merchants of the City of New Orleans lacked standing to recover city sales taxes paid under protest because they had no beneficial interest since the tax was not imposed upon the dealer but fell upon the consumer).
Conversely, the plaintiffs argued that under the State's enabling statutes, municipally-created exemptions to the amusement tax were not a "natural extension" of the legislative grant of authority, and that the State, by expressly codifying the classes of taxable activities and the classes of exempted activities, "laid out the law for the City" about what it could tax, what it could exempt, what could be the highest tax rate, and what the standard *1192 of reasonableness for the rules and regulations under which the tax could be collected. The plaintiffs maintained that they not only have standing to seek at least a declaratory judgment, but also for a refund because they paid the tax and did not pass it onto the customer. In support of their arguments, the plaintiffs' cite City of New Orleans, 640 So.2d at 237; Cox Cable New Orleans, Inc., 624 So.2d at 890; Radiofone, Inc., 616 So.2d at 1243; Hildebrand, 549 So.2d at 1218; and Acorn, 377 So.2d at 1206.
During oral argument, it was brought to our attention that after this appeal was lodged with this Court, the City Council amended sections 241, 243, and 276 of Chapter 150 of the City's amusement tax ordinances on April 16, 1998.[7] The amendment (1) added basic membership to the definition of "admissions," (2) reduced the tax rate from five percent to two percent, and (3) eliminated all exemptions not enumerated in La.R.S. 4:43 and 39:467.[8] The City's amended amusement tax ordinance, which became effective on June 1, 1998, provides that no tax shall be levied on any admissions:
1) to any event in the Louisiana Superdome[9]
2) to any church fair, church card or lotto party, church lecture, church picnic, or any religious festival, all of the proceeds of which inure to the benefit of a religious institution.
3) to any charitable benefit, the proceeds of which inure exclusively to the benefit of a religious institution.
4) charged the students or members of the faculty of any school or university which charges an admission fee in connection with the activities of the school or university; nor shall any tax be levied in respect to free passes issued by such school or university.
5) of ten cents or less charged children under the age of twelve.
By Order of this Court, the City and plaintiffs were allowed to file supplemental briefs after oral arguments, addressing why the City's enactment of the amended amusement tax ordinances did not render this appeal moot. On this issue, the City argues that the enactment of the amended ordinance rendered this case moot because of the change in the law and because anticipating future action by the City Council is inappropriate for this Court. As authority in support of its argument, the City cites Louisiana Associated Gen. Contractors, Inc. v. State, 95-2105 (La.3/8/96), 669 So.2d 1185; American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158 (La.1993); Robin v. Concerned Citizens for Better Educ. in St. Bernard, Inc., 384 So.2d 405 (La.1980); St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d 1165 (La.1987); Khosravanipour v. Department of Transp. & Dev., 93-2041 to 2045, (La.App. 1 Cir. 10/7/94), 644 So.2d 823, writ denied, 94-2729 (La.1/6/95), 648 So.2d 930; and Kaiser Aluminum Exploration Co. v. Thompson, 512 So.2d 1197 (La.App. 1 Cir. 1987).
The plaintiffs, on the other hand, maintain that the change in the law does not render this appeal moot because a "recognized and necessary" exception to the mootness doctrine applies. The plaintiffs insist that even *1193 if a party voluntarily stops his allegedly illegal conduct, "that change does not make the case moot, for the defendant would then be free to return to the old way. Defendant must show that `there is no reasonable expectation that the wrong will be repeated.'" Here, the plaintiffs allege that the City has failed to meet its burden because the only showing by the City was a conclusive assertion in its supplemental brief that it would be "inappropriate for this court to anticipate what the Council may or may not do." In support of their argument, the plaintiffs cite ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW, Vol. 1, § 2.13 (citations omitted).

LAW AND ANALYSIS

Mootness
Before we address the constitutionality of the City's amusement tax, this Court, as a threshold issue, must determine whether the case presents a justiciable controversy or whether the recently amended ordinances rendered this case moot. The jurisprudence of this Court is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. In order to avoid deciding abstract, hypothetical or moot questions, courts require cases submitted for adjudication to be justiciable, ripe for decision, and not brought prematurely. St. Charles Parish Sch. Bd. v. GAF Corp., 512 So.2d at 1165.
In Abbott v. Parker, 259 La. 279, 249 So.2d 908 (La.1971), this Court defined "justiciable controversy" in relation to declaratory relief, as follows:
A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character. Further, the party seeking the declaratory judgment should have a legally protectable [sic] and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of the declaratory judgment.
This traditional notion of a "justiciable controversy" is rooted in our Constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government. LA.CONST. art. II, § 1.
According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240; Louisiana Associated Gen. Contractors, Inc., 669 So.2d at 1193; American Waste & Pollution Control Co., 627 So.2d at 162. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. Robin, 384 So.2d at 405. If the case is moot, then "`there is no subject matter on which the judgment of the court can operate.'" St. Charles Parish Sch. Bd., 512 So.2d at 1171 (citing Ex parte Baez, 177 U.S. 378, 20 S.Ct. 673, 44 L.Ed. 813 (1900)). That is, jurisdiction, once established, may abate if the case becomes moot.
According to ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW, Vol. 1, § 2.13, a case may become moot for several reasons:
The controversy must normally exist at every stage of the proceeding, including the appellate stages. Thus, a case may become moot because the law has changed; because defendant has paid moneys owed and no longer wishes to appeal, notwithstanding plaintiff's desire to obtain a higher court ruling; because allegedly wrongful behavior has passed, been mooted, and could not reasonably be expected to recur; because a party could no longer be affected by a challenged statute; for example, a law regulating rights of minors when the party, through lapse of time, is no longer within the age brackets governed by the statute; or because a party has died.
Thus, it is not enough that the requirements of justiciability are satisfied when the suit is initially filed: the requirements must remain throughout the course of litigation up to the moment of final disposition.
*1194 When the challenged article, statute, or ordinance has been amended or expired, mootness may result if the change corrects or cures the condition complained of or fully satisfies the claim. Further, if it is concluded that the new legislation was specifically intended to resolve the questions raised by the controversy, a court may find that the case or controversy is moot. In such a case, there is no longer an actual controversy for the court to address, and any judicial adjudication on the matter would be an impermissible advisory opinion. However, legislative changes to the challenged legislation will not moot the controversy if an exception to the mootness doctrine applies.
We are well aware of the various exceptions to the mootness doctrine created to prevent either party from creating a technical mootness as a sham to deprive the court of jurisdiction. When a challenged article, statute, or ordinance is amended or repealed to cure any alleged constitutional defects, a reviewing court should consider two exceptions to the mootness doctrine to determine whether they should dismiss the case as moot. First, the court should consider whether the defendant's voluntary cessation of the alleged violation has mooted the case because the legislative body has eliminated the challenged provisions. Second, the court should consider the nature of the case and determine whether the curative changes leave unresolved collateral consequences. With this framework in mind, we now turn to the specifics of the exceptions and their application to this case.
First, under the voluntary cessation exception, if a defendant voluntarily stops allegedly wrongful conduct, then that change alone does not make the case moot, for the defendant would then be free to return to his old ways.[10] Therefore, the defendant must show with assurance that there is no reasonable expectation that the alleged violation will recur.[11]Louisiana Associated Gen. Contractors, Inc., 669 So.2d at 1193; Khosravanipour, 644 So.2d at 826. The United States Supreme Court defines the exception in the same terms. See, e.g., U.S. v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).[12]
In the case sub judice, we find that the defendant has sufficiently demonstrated that there is no reasonable expectation that the alleged violation will recur. The record demonstrates that not only has the City repealed the challenged ultra vires exemptions to the amusement tax, but also has replaced this with a comprehensive scheme that substantially mirrors the state legislation. The only evidence that the City may reenact the previous scheme is the mere assertion that the City could again at any time enact legislation inconsistent with general State law. We are not persuaded by this mere assertion.
In City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), the United States Supreme Court was faced with an issue similar to the one *1195 before this Court.[13] In Aladdin's Castle, the city exempted certain amusement centers from a prohibition against the operation of amusement devices by unattended children, since an adult accompanied children less than seven. Thereafter, Aladdin's application for a license was refused because the Chief of Police found that Aladdin's parent corporation was connected with criminal elements. Aladdin then obtained an injunction requiring the city to issue the license on a finding by a Texas state court that Aladdin was not connected with any criminal elements and that vagueness in the ordinance violated both the State and Federal Constitutions. After issuing the license, the city then repealed the amusement center exemption, thereby reinstating the 17-year-old age requirement. Aladdin then filed suit again and the district court declared unconstitutionally vague the licensing ordinance passed by the city of Mesquite, Texas, but upheld the age restriction in the ordinance.[14] The United States Court of Appeals for the Fifth Circuit affirmed the finding that the ordinance was unconstitutionally vague, but reversed the age restriction as without a rational basis. After the United States Supreme Court noted probable jurisdiction, Mesquite amended the licensing ordinance eliminating the challenged vague phrase, but retained the age restriction.
In rejecting Mesquite's claim that the amendment to the ordinance mooted the case, the United States Supreme Court held that the defendant's voluntary cessation of the challenged practice did not necessarily deprive the Court of jurisdiction because it "would not preclude [Mesquite] from reenacting precisely the same provision if the District Court's judgment was vacated." Aladdin's Castle, 455 U.S. at 289. Critical to the Court's decision, however, was Mesquite's practice of following such a course as evidenced by the city's elimination of the amusement center exemption in response to the state court's judgment and the announced intention by the city to reenact the unconstitutional ordinance if the case were dismissed as moot. Ibid. Aladdin's Castle properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation. These essential facts, which created the case-or-controversy in Aladdin's Castle, are absent from the case before us.[15]
As evidenced by the record, we can find no reasonable expectation that the City will reenact the alleged ultra vires exceptions to the amusement tax. We find it significant that subsequent to a conclusion by the lower court on January 26, 1998, that the City's amusement tax ordinances were unconstitutional because they were inconsistent with the State's enabling legislation, the City Council voluntarily amended the challenged City ordinances on April 16, 1998, so as to follow the State enabling statute almost identically. The provisions of the amendment became effective June 1, 1998. There is no evidence in the record, not even the slightest indicia, to suggest that the City would significantly alter the presently enacted amusement tax ordinances, which are substantially similar to the State enabling legislation. Further, the mere power to reenact a challenged article, statute, or ordinance is not a sufficient basis on which a court can conclude that a reasonable expectation of a recurrence exists. This is too speculative. Rather, there must be evidence suggesting that the *1196 challenged legislation will likely be reenacted. See, e.g., Princeton Univ. v. Schmid, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (per curiam); National Black Police Ass'n v. District of Columbia, 108 F.3d 346 (D.C.Cir.1997).
This is not simply a case where the City has voluntarily ceased allegedly illegal conduct or ceased to enforce a provision of local legislation. Rather, the City through a solemn legislative act has seen fit to enact a comprehensive amendment to its amusement tax ordinances that contained allegedly inconsistent exceptions to state enabling legislation since 1967. The amendments added basic membership to the definition of "admissions," reduced the tax rate from five percent to two percent, and eliminated all exemptions not enumerated in La.R.S. 4:43 and 39:467. Thus, we are convinced that it is unlikely that the City would replace the comprehensive amusement tax ordinances as presently enacted with provisions that it repealed only a few months ago.
Thus, under these facts, we are not convinced that the City will "revert to its old ways" by replacing the comprehensive amusement tax ordinances as presently enacted and reenact the challenged exemptions; rather, we conclude that it can be said with assurance that there is no reasonable expectation that the City will reenact the allegedly offending exemptions. Thus, the voluntary cessation exception does not except this case from the mootness doctrine. Having found that the alleged offending ordinances were curatively amended so as to preclude the application of the voluntary cessation exception, we move to the second exception.
A second exception to the mootness doctrine, applicable when a challenged article, statute, or ordinance is amended or repealed, is the collateral consequences exception. Although this exception is most often used to enable review of expired criminal sentences, see, e.g., Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); State v. Smith, 96-1798 (La.10/21/97), 700 So.2d 493, it has frequently been applied in the civil context. 13A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3 (2d ed.1984); 15 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.00[3], 101-190 (3d ed.1997). Under this exception, the court must determine the nature of the relief sought by the parties in concluding whether or not a change in the law moots a case. Thus, if a plaintiff's petition sought solely prospective relief in the form of a declaratory judgment, then the change in the law may lead to dismissal of the case. However, if, in addition to prospective relief, claims for compensatory relief are made, then a change in the law may not moot the case. Therefore, although the primary subject of a dispute has become moot, the controversy is not moot if there are collateral consequences to one of the parties. See ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW, Vol. 1, § 2.13; CHESTER J. ANTIEAU & WILLIAM J. RICH, MODERN CONSTITUTIONAL LAW § 48.32 (2d ed.1997). The collateral consequences of the case or controversy give a party a concrete interest in the outcome of the litigation and ensure that the appeal is not moot.
Therefore, in some circumstances, a curative amendment to a challenged article, statute, or ordinance will not moot an attack on its former provisions. Presumably, the most obvious reason for denying mootness under the collateral consequences doctrine is when damages or other monetary relief has been claimed on account of former provisions of a challenged article, statute, or ordinance. Under this condition, the repeal of legislation will not render moot a claim based on that legislation when the repeal does not have retroactive effect.
In addition to a judgment seeking a declaration that the City's amusement tax ordinances were unconstitutional, the plaintiffs sought a refund of the amusement taxes paid. The plaintiffs' petition alleged that they had paid a total sum of $650,000 to the city in compliance with the ordinances, $130,828.84 of it under protest.[16] The plaintiffs' *1197 petition clearly sought not only declaratory relief but also compensatory or other monetary relief based upon the former provisions of the challenged legislative ordinances;[17] thus, the collateral consequences doctrine excepts this appeal from being moot. This collateral consequence gives the plaintiffs a concrete interest in the outcome of the litigation and ensures that this appeal is not moot.

Constitutional Issues
Having found that the City's amendment to the amusement tax ordinances did not moot this appeal, we now turn our discussion to the constitutionality of those ordinances. As noted above, the express reasons given by the lower court for declaring the entire city ordinance unconstitutional were: (1) the lack of any language in the enabling legislation authorizing the City to enact inconsistent exemptions; (2) the fact that the City had enacted a series of inconsistent exemptions; and (3) those reasons "ably argued by plaintiffs in their memorandum and oral argument." Trial Court's Amended Reasons for Judgment, p. 1. Thus, the judgment of the lower court granted plaintiffs the totality of the relief they sought in their cross motion for summary judgment, that is, a declaration of unconstitutionality of the ordinances.

Public-facility Exemption
There remains the question of whether the exemption found in Chapter 150, Article VI, section 150-528 is unconstitutional because it does not track the express language of La.R.S. 39:468, and therefore, is "inconsistent" with State legislation. Arguably the City has not changed the law so as to have eliminated completely the challenged legislation. Section 150-528 (the "public facilities exemption"), found in Article VI of the City Codeentitled "Sales and Use Tax"provides:
The sale of admission tickets to events, activities or enterprises, wherever sold, provided that such events, activities or enterprises occur or are held or conducted on the premises of any publicly owned multiuse [sic] facility:
(1) Which is owned by and operated by or on behalf of the state or any of its agencies, boards, commissions or political subdivisions, including any agency, board or commission of any political subdivision, except the city;
(2) Which is commonly used for athletic events, entertainment events, conventions or similar uses; and
(3) Which has a capacity of at least 2,000 persons;
shall be exempt from sales and use taxes levied by the city only for such period as the state, the parish school board and the regional transit authority also exempt such facilities in the parish from all state and local sales and other similar taxes in accordance with R.S. 39:468 or any similar provision of law.
However, La.R.S. 39:468 (emphasis added)entitled "Tax exemption, publicly-owned facility"provides:
Any event, activity, or enterprise, or the right of admission thereto, conducted in any publicly-owned facility owned and operated by or for the state, or any of its agencies, boards, or commissions, or by any political subdivision, or any sale, service, or other transaction occurring in such facility or on the publicly-owned property on which the facility is located, including without limitation the sale of admission tickets to events, activities, or enterprises, wherever sold; parking; and tours of the facility shall be exempt from all present and future taxes levied by the state including but not limited to the sales, use, amusement, or any other tax; provided however, that such exemption shall not apply unless the local taxing authority *1198 first exempts from any tax levied by that authority such events, activities, enterprises, sales, services, or other transaction occurring within all publicly-owned facilities within the jurisdiction of said local taxing authority. However, this exemption shall not extend to any sale of goods or other tangible personal property at a trade show or other event at which the sale of such goods or property is the primary purpose of the show or event.
Turning to general rules of statutory construction, courts should remember the following axioms. Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. Hutchinson v. Patel, 93-2156 (La.5/23/94); 637 So.2d 415. When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. LA.CIV. CODE art. 9; Daigrepont v. Louisiana State Racing Comm'n, 95-0539 (La.App. 4 Cir. 10/26/95), 663 So.2d 840. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La.1993).
In the case sub judice, La.R.S. 39:468 provides for a conditional exemption for public-facilities from all present and future sales, use, amusement, or any other taxes levied by the state. The language of the statute makes clear that the exemption from any tax levied by the state is conditioned upon the local taxing authority first exempting from any tax it levies all publiclyowned facilities within its jurisdiction. Thus, the statute does not require the local taxing authority to exempt public-facilities; rather, it conditions the exemption from state taxes on such. Therefore, we conclude that La.R.S. 39:468 envisioned exactly what the City has done. Because the City did not exempt all public-facilities from the taxes it levies, the exemption from state taxes may not apply. However, there is no ambiguity in the language of La.R.S. 39:468 that would lead us to conclude that the local taxing authority must exempt all. Thus, despite the fact that section 150-528 does not track the express language of La.R.S. 39:468, we conclude that section 150-528 is not unconstitutional.

Remaining Issues
Article 5, Section 5(F) of the Louisiana Constitution of 1974 provides that if the supreme court has appellate jurisdiction under Section 5, then that jurisdiction may extend over all issues involved in the civil action before it. However, this Court has repeatedly interpreted Article 5, Section 5(F) to mean that our appellate jurisdiction does not extend over all issues raised in the plaintiff's petition, but only those on which the trial court has ruled. Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697 (La.1993). Consequently, although plaintiffs argued that the tax exemption scheme set forth in the City's ordinances was unconstitutional as applied, that issue is not before this Court because the lower court did not include this conclusion in its judgment and is not an argument supported by the record.[18]
*1199 We have consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of this is essential to the decision of the case or controversy. See Louisiana Associated Gen. Contractors, Inc. v. New Orleans Aviation Bd., 97-0752 (La.10/31/97), 701 So.2d 130; Cameron Parish Sch. Bd. v. Acands, Inc., 96-0895 (La.1/14/97), 687 So.2d 84; White v. West Carroll Hosp., Inc., 613 So.2d 150 (La.1992). Further, our jurisprudence has resolved that the practice of courts is "never to anticipate a question of constitutional law in advance of the necessity of deciding it." Matherne v. Gray Ins. Co., 95-0975 (La.10/16/95), 661 So.2d 432, 434. Hence, courts should avoid constitutional rulings when the case can be disposed of on nonconstitutional grounds or basis. Blanchard v. State, 96-0053 (La.5/21/96), 673 So.2d 1000; Communist Party of U.S. v. Subversive Activities Control Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (citing Liverpool, New York & Philadelphia S.S. Co. v. Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). This principle is based, in part, upon the realization that, "by the very nature of the judicial process, courts can most wisely determine issues precisely defined by the confining circumstances of particular situations." See Parker v. County of Los Angeles, 338 U.S. 327, 70 S.Ct. 161, 94 L.Ed. 144 (1949).
The plaintiffs alleged that La.R.S. 4:41 et seq. and La.R.S. 39:467-68 are the enabling statutes for the City's amusement tax and that the City has no authority to enact legislation inconsistent with these state statutes. The City, on the other hand, argues that under its broad Home Rule Charter powers, it is empowered to enact any tax regardless of any state enabling legislation.[19] Additionally, the City alleges that the plaintiffs lack standing to pursue any claim for a refund because section 150-279 of the City code provides that the tax is not to be assumed by the seller but rather collected by the seller from the purchaser and remitted to the City. However, the plaintiffs maintain that since they did not pass this tax onto their customers but rather assumed it themselves as a part of doing business in New Orleans, they are entitled to the refund.
While the City's amusement tax ordinances recite that they were enacted pursuant to state authority, the lower court nonetheless should have first considered whether or not the City has the authority under its Home Rule Charter to enact the challenged legislation. There is no indication in the record that the lower court considered whether the City had the authority to enact amusement tax ordinances inconsistent with state legislation under its Home Rule Charter and whether the ordinances were validly enacted pursuant to this authority. The resolution of these issues could have avoided the necessity of reaching the constitutionality of the City's amusement tax ordinances. Thus, if the lower court were to find that the City's Home Rule Charter empowered it to enact these ordinances, then this would allow it to dispose of this case without reaching the constitutionality of the ordinances. Therefore, we find the judgment of the lower court on the constitutionality of the ordinances premature.
Furthermore, the lower court should have considered whether the plaintiffs had a right of action in enforcing the right asserted.[20] The City argues that the plaintiffs lack *1200 standing in this matter because the amusement tax ordinances provide that the tax "shall not be assumed by the person or entity providing the amusement, [rather] it shall be mandatory on that person or entity to collect such tax from the purchaser for remittance to the Department of Finance." Thus, because the plaintiffs are to collect the tax as a pass through from the public to the City, they are without standing.[21]
In order for the plaintiffs to have a right of action for this refund, they must have paid the taxes under protest, which is a mandatory prerequisite for recovery of taxes paid. See Red River Coors, Inc. v. McNamara, 577 So.2d 187 (La.App. 1 Cir.), writ denied, 582 So.2d 1306 (La.1991). The governing city ordinance is section 150-192entitled "SameLegal remedy for recovery of protested tax"which provides:
(a) A right of action is hereby created to afford a remedy at law for any person aggrieved by the prohibition of courts restraining the collection of tax.... The person resisting the payment of any amount found due by the director of the department of finance or of enforcement of any provision of this chapter shall pay the amount found due to the director and, at that time, shall give the director notice of his intention to file suit for the recovery thereof. Upon receipt of this notice, the amount paid shall be segregated and held by the directory ... for a period of 30 days. If suit is filed within the 30-day19 period for the recovery of such amount, the funds segregated shall be further held pending the outcome of the suit.
This post-deprivation relief method has been approved by the United States Supreme Court. See McKesson Corp. v. Division of Alcoholic Bev. & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).
The only evidence in the record that plaintiffs paid under protest, as prescribed by section 150-192, is the single allegation in their petition, an allegation denied by the City. Additionally, the plaintiffs on October 20, 1997, filed for and were granted leave by the lower court to deposit in the registry of the court taxes allegedly owed and paid "under protest for some time." From the record before this Court, there is no evidence beyond these allegations that the plaintiffs followed the proper procedure for payment under protest. Further, there is nothing in the record to indicate that the lower court considered fully whether plaintiffs have a legal interest in enforcing the right asserted based upon section 150-279. See Cox Cable New Orleans, Inc., 624 So.2d at 890; Krauss Co., 110 So.2d at 104. Thus, if the lower court were to find that the plaintiffs lacked a right of action, then this would obviate the necessity of the court from reaching a determination of the constitutionality of the ordinances. Again, by failing to make a determination on this nonconstitutional ground, the lower court prematurely reached a judgment on the constitutionality of the ordinances.
Therefore, because the lower court reached the constitutionality of the City amusement tax ordinances prematurely, we vacate and set aside the summary judgment granted below and remand this case to the district court for further proceedings in accordance with the views expressed in this opinion.

DECREE
For the foregoing reasons, we vacate and set aside the judgment of the lower court granting plaintiffs' motion for summary judgment. The case is remanded to the Civil District Court for the Parish of Orleans for further proceedings consistent with this opinion and the reasons expressed herein.
JUDGMENT VACATED AND CASE REMANDED.
LEMMON, J., concurs.
NOTES
[*] Calogero, C.J., not on panel, recused. See Rule IV, Part 2, § 3.
[1] Chapter 150, Article IV, section 150-243 et seq. of the Code of the City of New Orleans.
[2] The taxable "amusements" included any theater, motion picture house, athletic contest, exhibition, concert, circus, night club, cabaret, sightseeing steamers, as well as all mechanical devices operated for pleasure or skill, to name but a few. See La.R.S. 4:41.
[3] The exemption for live music performances was conditioned upon the appropriation of sufficient recurring revenues to the budget to cover the estimated cost of that exemption. As of the date of this opinion, no replacement revenues has been appropriated.
[4] Both La.R.S. 39:467 and La.R.S. 39:468 excluded from this tax exemption the sale of goods at trade shows or other events where the sale of goods is the primary purpose of the event.
[5] The plaintiffs' petition alleged that a total sum of $650,000 had been paid to the city in compliance with the ordinance, $130,828.84 of it under protest.
[6] At the time this suit was filed, La.R.S. 39:468 provided an additional exemption for admission to publicly-owned facilities.
[7] Pursuant to LA.CODE EVID. art. 202(A)entitled "Judicial notice of legal matters"this Court takes judicial notice of the City's amended ordinance. Article 202(A) provides:

A court, whether requested to do so or not, shall take judicial notice of ... the ordinances enacted by any political subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court.
Pursuant to an Order of this Court, the City and plaintiffs, by a joint supplementation of the record, filed for recordation a certified copy of the amended amusement tax ordinance.
[8] Notably, the City did not exempt all publiclyowned facilities within its jurisdiction from levied taxes as provided for in La.R.S. 39:468. However, this is not fatal to the City as La.R.S. 39:468 provides that publicly-owned facilities are exempt from any sales, use, amusement, or any other tax only if the local taxing authority first exempts from any tax levied by that authority on admission to events, activities, enterprises, sales, service, or other transaction occurring within all publicly-owned facilities within the local taxing authority's jurisdiction. See infra.
[9] Compare Chapter 150, Article VI, section 150-524 with La.R.S. 39:467 (City Code exempting the Louisiana Superdome with substantially similar language as the State legislation.).
[10] See ERWIN CHEMERINSKY, FEDERAL JURISDICTION 136 (1994) (noting that a case should not be considered moot under the voluntary cessation exception to the mootness doctrine "if the defendant voluntarily ceases the allegedly improper behavior but is free to return to it at any time").
[11] See, e.g., ANTIEAU & RICH, MODERN CONSTITUTIONAL LAW § 15:19 (noting that if there is a good likelihood that a defendant who has ceased his illegal activity may resume it in the future, then the courts will not treat the issue as moot unless it can be shown by the defendant that there is no reasonable expectation that the wrong will be repeated) (citing United States Supreme Court cases beginning in the 1890s).
[12] It should be noted that the United States Supreme Court has not been consistent in the standard applicable under this exception. Compare City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (noting that a case may be moot if the defendant can demonstrate that the allegedly wrongful behavior could not reasonably be expected to recur) with County of Los Angeles v. Davis, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (noting that a case may be moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation). The difference results from whether the alleged violation results from authorized legislation or whether it results from simple conduct.
[13] In Louisiana Indep. Auto Dealers Ass'n v. State, 295 So.2d 796, 799 n. 1 (La.1974), this court recognized that federal decisions on justiciability "should be considered persuasive." See also Louisiana Associated Gen. Contractors, Inc., 669 So.2d at 1192.
[14] The licensing ordinance at issue governed the licensing of coin-operated amusement establishments in the city. Section 6 of the ordinance directed the Chief of Police to consider whether a license applicant had any "connections with criminal elements." Section 5 of the ordinance prohibited a licensee from allowing children under 17 years of age to operate the amusement devices unless accompanied by a parent or legal guardian. See Aladdin's Castle, 455 U.S. at 286.
[15] While federal jurisdiction is expressly limited by the "cases and controversies" requirement in Article III of the United States Constitution, there is no comparable limitation found in the Louisiana Constitution. Rather, our requirement of a justiciable controversy and the corresponding prohibition of advisory opinions arises from the Code of Civil Procedure and our jurisprudence.
[16] In addition to this allegation, the plaintiffs were granted leave by the lower court by ex parte motion to deposit into the registry of the court taxes that became due under the amusement tax ordinances. The plaintiffs' motion asserted that they had been paying the amusement tax to the City "under protest for some time." From the record, a total sum of $25,767.05 has been deposited into the registry of the court by the plaintiffs. Notably absent from the motion was the nominal plaintiff, Douglass Castro.
[17] We interpret the plaintiffs' assertion of standing to seek a refund as a compensatory claim based upon the former provisions of the City amusement tax, even if only de minimis relief may be had. As long as there remains a concrete interest in the outcome of the litigation, the case is not moot notwithstanding the size of the dispute.
[18] In addition to their arguments that the additional exemptions were granted by the City in contravention of the state enabling legislation, plaintiffs alleged that the City's licencing and enforcement scheme violated constitutional safeguards of equal protection and due process. Plaintiffs asserted in their memorandum in support of summary judgment that the amusement tax is invalid as applied to "jukebox-only" nightclubs, since it is a prohibited licence tax rather than an excise or sales tax. See City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6 (La.1956). Plaintiffs asserted that the City's administrative system for collection of the amusement tax is impermissibly vague and over broad, and they maintained that the City's arbitrary failure to enforce the tax on trade shows serves as an impermissible de facto exemption to the tax. Plaintiffs further asserted that the City's selective enforcement of the amusement tax has eroded the tax base and has unfairly burdened only a few remaining businesses with the discriminatory tax.

This Court has no way of determining which of the additional arguments of the plaintiffs may have formed the basis for the ruling of the trial court. The trial court's succinct reasons for judgment only expressly hold that the amusement tax is facially invalid because of a conflict with state law. However, we note that there is a qualitative difference in the two sets of arguments advanced by the plaintiffs. The express reasons given by the trial court simply involved the interpretation of the amusement tax ordinance in light of the state enabling legislation, a purely legal issue. The plaintiffs' remaining claims, however, attack the amusement tax as applied and require a minimum finding of fact to be made by the trial court as a basis for its legal determination, a finding which is notably absent from the trial court's reasons for judgment.
[19] The City's Home Rule Charter power is constitutionally protected. See LA.CONST. art. VI, § 4. Moreover, we have consistently recognized that at the time of the adoption of the 1974 Constitution, the City had full power to levy any tax not prohibited by or inconsistent with the Constitution. See, e.g., Acorn, 377 So.2d at 1206; Hildebrand, 549 So.2d at 1218.
[20] The exception of no right of action questions the plaintiff's standing or interest to bring suit. LA.CODE CIV. P. art. 927(5). Specifically, standing raises the issue of whether the plaintiff has any interest in judicially enforcing the right asserted. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1157-58 (La.App. 1 Cir. 1992). The exception relates specifically to the person of the plaintiff. Ricard v. State, 544 So.2d 1310 (La.App. 4 Cir.1989).
[21] We in no way address the issue of whether or not the plaintiffs have standing to seek a refund in this controversy as that is not a matter properly before us.