SEXTON, J.
| j Monroe City Couneilmen Robert Johnson and Arthur Gilmore (“the Councilmen”) filed suit for declaratory relief, man *931 damus, a temporary restraining order and preliminary and permanent injunctions arising out of Mayor James Mayo’s alleged directive to Chief of Police Ronald Schleu-ter (collectively “the Mayor”) to charge all non-traffic misdemeanor offenders under the relevant state statute instead of the violated city ordinance so that those offenders would be handled in district court rather than Monroe City Court. The district court refused the relief requested and dismissed the action. This appeal ensued. For the reasons stated herein, we conclude the action is moot and affirm the dismissal.

FACTS

Monroe is a home rule charter city with a Mayor-Council form of government. The Mayor serves as the chief executive officer with the chief of police as the chief law enforcement officer of the city. Section 3-09 of the Monroe City Home Rule Charter (“the Charter”) provides:
A. The Mayor as Chief executive officer of the city, shall have the following powers and duties: (1) See that all laws, provisions of this charter and acts of the Council, subject to enforcement by the Mayor or by officers subject of the Mayor’s direction and supervision, are faithfully executed.
Section 2-11 of the Charter provides that the acts of the Council shall have the force of law by ordinance. The Council has enacted a criminal code by ordinance. The Charter further provides that the police department is a department within the Mayor’s administration and that the chief of police is under the supervision and direction of the Mayor and, pursuant to section 4-04 of the Charter,
| gshall direct and be responsible for the preservation of public peace and order, prevention of crime; apprehension of criminals; assistance of the courts and other law enforcement agencies and the enforcement of laws of the state and ordinances of the Council ...”
Against that structural backdrop, this matter arose out of the Mayor’s efforts to better manage the city’s budget. In particular, the funding for prisoner housing was inadequate and the Monroe City Court was in financial crisis, requiring substantial supplementing from the city treasury (more than $600,000 last year). In an effort to address these problems, the May- or decided to relieve the city court of some of its cases, thereby saving the city money and requiring less prisoner housing. On December 7, 2005, the Mayor issued an executive order effective January 1, 2006, directing the chief of police to instruct all police officers to charge all future non-traffic misdemeanor offenses under state law rather than city ordinance. A news release followed. According to the Mayor, this was to be a temporary measure which would be reviewed after several months to determine if it was a viable ongoing option for better managing the budgetary problems.
Councilmen Johnson and Gilmore opposed this directive and met with the Mayor to express their opinion that the directive violated the Charter. The Councilmen’s position was that the Mayor was failing to enforce the acts of the council, specifically the criminal code, by directing that officers not charge offenders with violations of the city’s ordinances. Shortly thereafter, on December 21, 2005, the Mayor issued a second letter clarifying his position and directing the police department to exercise “discretion” in whether to charge offenders under state law or city | .¡ordinance. In that letter of clarification, the Mayor expressed his preference that the non-traffic misdemeanor violations be charged under state law. The following day, December 22, 2005, the Councilmen *932 responded to the Mayor by letter advising him of their intent to seek judicial relief.
On March 22, 2006, Councilman Johnson introduced an ordinance in an attempt to stop the transfer of cases to district court, citing the alleged violation of the Charter by the Mayor. The council passed this ordinance; but, in April 2006, the Mayor vetoed it. This lawsuit followed.
As previously stated, after a hearing in the matter, the district court denied the relief requested by the Councilmen, finding no violation of the Charter in the May- or’s actions. This appeal ensued.

DISCUSSION

The Councilmen assign three errors on appeal as follows:
1. The trial court erred when it denied Appellants’ motion for judgment on the pleadings after it was established that Appellees had not filed an answer to the Petition for Declaratory Judgment, Mandamus, a Temporary Restraining Order, a Preliminary Injunction and a Permanent Injunction, when an answer was required.
2. The trial court erred when it denied Appellants’ request for Mandamus after Appellants met their burden of proof in showing that the Mayor failed to perform his ministerial duties; particularly, his duty to see that all acts of the City Council are faithfully executed.
3. The trial court erred when it denied Appellants’ request for injunctive relief after Appellants met and or exceeded their burden of proof in showing that the Mayor, while recognizing and understanding his duty, did not faithfully execute the charter and enforce the acts of the City Council.
|4We will first address the substantive claims asserted in assignments of error numbers two and three.
In the instant case, there is no dispute that the Charter sets forth the duties and responsibilities of both the Mayor and the chief of police and that those duties include faithful execution of the acts of the council, which includes the Monroe criminal code. Further, there is no dispute that, under the Charter, the chief of police and the police department are under the administration of the Mayor and the chief of police is responsible for enforcement of the criminal code. The Councilmen argue to this court that, in order for the Mayor to perform this duty of faithful execution of the acts of the council, he must see that all offenses violative of any city criminal ordinance must be charged by the police under that ordinance, rather than state law. They contend that the Mayor’s directive constitutes a disregard of the city’s criminal code in violation of his duties as set forth in the Charter. The Mayor now contends that he cannot direct the police on how to charge an offender. He submits that he merely stated a preference with regard to charging, which does not constitute a violation of his duties under the Charter.
It is well-established that municipal or city courts and state district courts have concurrent jurisdiction over some misdemeanor offenses. City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311; Bush ex rel. State v. Williams, 504 So.2d 1060 (La.App. 1st Cir. 1987), unit denied, 505 So.2d 1131 (La. 1987).[1] While jurisdiction over felonies is *933 reserved |sfor the state, Const. Art. VI, § 9, municipalities are free to criminalize the same misdemeanor conduct that the state has criminalized as misdemeanors and provide punishment therefor, so long as the punishment is not harsher than the penalty provided for the same conduct under state law. City of Baton Rouge v. Ross, supra.
When an offense has been committed, it is the duty of the peace officer at the time of booking to record the charge or charges upon which an offender was arrested. La. C. Cr. P. art. 228(C)(1)(b). The arrest is made in the discretion of the police officer, as is the charge to be recorded. The district attorney is then vested with sole discretion in prosecuting an offender under any given state statute. La. Const. Art. 5, § 26(B); La. R.S. 16:1(B); La. R.S. 14:4; and La. C. Cr. P. art. 61. The city prosecutor is afforded the same status and discretion in prosecuting an offender under any provision of the city’s criminal code. La. C. Cr. P. arts. 7 and 934(3). Where conduct is violative of both city ordinance and state statute, the jurisprudence has long recognized that the result may be a “race to the courthouse” to determine whether the offender is prosecuted in city or district court. City of Baton Rouge, supra; Bush ex rel. State v. Williams, supra, and cases cited therein.
For purposes of the case sub judi-ce, the significance of this principle is that it is the district and city attorneys who make the decision, in their discretion, under which ordinance or statute an offender will ultimately be prosecuted. The Mayor plays no role in these determinations. Whether the | fiMayor directed the chief of police to charge under state law or otherwise is of no moment, as the discretion as to which statute to ultimately charge and prosecute rests with the district or city attorneys.
Moreover, the Mayor repeatedly testified that he did not have the authority to direct the chief of police and the police department on how to charge offenders, but maintained that he only expressed a preference for transferring the cases for budgetary reasons. We find no violation of his duties as set forth in the Charter in stating his preference in this regard. Accordingly, we find no ministerial duty that could be compelled by an order of mandamus, nor any prohibited action to be enjoined.[2]
Any judgment rendered against the Mayor would have no useful purpose or provide any practical relief. It is, therefore, moot. As the supreme court explained in Cat’s Meow, Inc. v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186:
According to Louisiana jurisprudence, an issue is “moot” when a judgment or decree on that issue has been “deprived of practical significance” or “made abstract or purely academic.” A case is “moot” when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. A case is “moot” when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, then “there is no subject matter on which the judgment of the court can operate.” (Internal citations omitted.)[3]
*934 |7The present case is distinguishable from Smith v. City of Alexandria, 420 So.2d 1329 (La.App. 3d Cir.1982), wherein the court enjoined the Mayor from affecting city employees’ labor contracts to prevent deficit spending. In Smith, the may- or of Alexandria reduced the number of hours in a work week, thereby affecting the labor contracts of the city employees. While the mayor apparently was authorized to take remedial measures to prevent deficit spending, Alexandria’s charter expressly provided that the city employees’ labor contracts fell within the province of the city council, not the Mayor. Here, the Mayor did not engage in behavior prohibited by the Charter. As stated, he expressed a preference for charging of non-traffic misdemeanors, the discretion for which is vested initially with the police officers and ultimately with the city and district attorneys. Again, we find no action on the part of the Mayor to compel or to enjoin.
Regarding assignment of error number one, the Councilmen submit that, since no answer was filed prior to the time set for hearing, they are entitled to judgment on the pleadings. Our conclusion that there is no action to compel or enjoin obviates this assignment. Moreover, we note that counsel for the Mayor filed an answer during the hearing.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed at Appellants’ cost.
AFFIRMED.

. Bush ex reí. State v. Williams and City of Baton Rouge v. Ross provide thorough reviews of the origin of this concurrent jurisdic *933 tion, home rule charter governments and constitutional limitations thereon.

. We note that the Mayor argued in brief that an agreement confected subsequent to the ruling in this case renders the case moot. The attachment to the Mayor's brief is outside the scope of the record and, thus, will not be considered. Gray v. Crocker, 37,683 (La.App. 2d Cir.9/24/03), 855 So.2d 842.

. The voluntary cessation exception to the mootness doctrine is not presented here by the Mayor's withdrawal of his December 7,