NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0173

CATHRYN LYNN GILLEO

VERSUS

AMY BRAUD GILLEO

Judgment Rendered: OCT 18 2024

* * * * * * *

On Appeal from the 23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Trial Court No. 137,553

Honorable Cody Martin, Judge Presiding

* * * * * * *

| | |
|---|---|
| Cathryn Lynn Gilleo | Plaintiff/Appellee<br>Self-Represented Litigant |
| Alistair A. Adkinson<br>New Orleans, Louisiana | Attorney for Defendant/Appellant<br>Amy Braud Gilleo |

* * * * * * *

BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.

Stromberg, J., Concurs

Penley, J. Dissents in part and assigns reasons.

**PENZATO, J.**

Defendant, Amy Braud Gilleo, appeals a judgment granting plaintiff, Cathryn Lynn Gilleo, a protective order. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 12, 2023, Cathryn filed a petition for protection from abuse against her mother, Amy, on behalf of herself and her three minor children. On that same date, the trial court issued a temporary restraining order against Amy effective through August 29, 2023. A hearing was set for July 25, 2023. The July 25, 2023 hearing was continued to August 14, 2023.

On August 14, 2023, the matter was heard before a hearing officer. Amy was not present.[1] The hearing officer recommended that a judgment be signed granting a protective order as prayed for, to be effective for a period of nine months. The parties were given until 4:30 p.m. on August 21, 2023, to file an objection to the recommendation.

The record reflects that on August 21, 2023, Amy fax filed an objection to the hearing officer's recommendation. The basis of her objection was that she was unable to participate in the August 14, 2023 hearing officer conference due to a COVID-19 diagnosis, leading to the grant of Cathryn's petition. She sought an order rescinding the hearing officer's recommendation and resetting the hearing officer conference so that she could participate therein.

On September 1, 2023, the trial court issued a "Louisiana Uniform Abuse Prevention Order," effective through May 14, 2024, ordering Amy to stay away from and not contact, abuse, harass, stalk, follow, track, monitor, or threaten Cathryn or

---

[1] The record reflects that a combined motion to enroll and motion to continue was fax filed on Amy's behalf on August 14, 2023. According to the motion, Amy was diagnosed with COVID-19 on August 13, 2023, resulting in her medical quarantine. The original combined motion was filed on August 24, 2023. The trial court signed an order on September 7, 2023, granting the motion to enroll and crossing out the proposed order for a continuance. On appeal, Amy does not assign as error the denial of her motion to continue.

2

her minor children. On October 2, 2023, Amy filed a motion for devolutive appeal. On appeal, she asserts the trial court erred when it declared her written objection to the hearing officer's recommendation untimely, even though it was fax filed by the assigned deadline and the original pleading was received by the court within seven business days thereafter.

## APPEALABILITY OF JUDGMENT

Protective orders are appealable as a matter of right. See La. C.C.P. arts. 2083(C), 3612; La. R.S. 46:2136(F)(1). *Pellerano v. Pellerano*, 2017-0302 (La. App. 1 Cir. 4/12/19), 275 So. 3d 947, 949, writ denied, 2019-00756 (La. 9/17/19), 279 So. 3d 379. In this case, Amy filed a motion for devolutive appeal while the protective order was still in effect.[2] Although the protective order is no longer in effect, we find that the case is not moot, as the entry of the protective order could have lasting effects on Amy's personal and professional life. If the order were overturned on appeal, applicant would have the right to an expungement under La. R.S. 46:2136.2(A). See *Watson v. Banguel*, 2021-01793 (La. 2/8/22), 332 So. 3d 632.[3] As appeals are favored, we address the merits of Amy's appeal. See *Whitney Bank v. Rayford*, 2021-0407 (La. App. 1 Cir. 4/5/22), 341 So. 3d 741, 744.

## LAW AND DISCUSSION

Louisiana Revised Statutes 13:850 provides, in pertinent part:

A. Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions, and the clerks of court shall not intentionally turn off or disconnect the equipment used to receive facsimile filings. Filing shall be deemed

---

[2] We note that in *Mckee v. Mckee*, 2020-1314 (La. App. 1 Cir. 6/16/21), 2021 WL 2451440, writ denied, 2021-00984 (La. 11/3/21), 326 So. 3d 879, this court dismissed the appeal of a protective order as moot. In *McKee*, the motion for appeal was filed **after** the expiration of the protective order.

[3] Moreover, without expedited treatment, by the time the appeal of a protective order is lodged, docketed, argued, and decided, most will be moot. If the case takes longer to be decided by the appellate court than the time the protective order is in effect, all appeals of protective orders would be declared moot. See *Watson v. Banguel*, 2020-0799 (La. App. 1 Cir. 9/30/21) (McDonald, J., dissenting), 2021 WL 4465839, *3, writ granted, cause remanded, 2021-01793 (La. 2/8/22), 332 So. 3d 632.

complete on the date and time indicated on the clerk of court facsimile transmission receipt. No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

B. Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:

(1) The original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.

(2) The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any.

(3) A transmission fee of five dollars.

C. If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

Under La. R.S. 13:850, a filing is merely conditional once a facsimile of a document is transmitted. *Hunter v. Morton's Seafood Restaurant & Catering*, 2008-1667 (La. 3/17/09), 6 So. 3d 152, 156. The litigant must further establish the document was delivered to the clerk within the deadline. *Petit-Blanc v. Charles*, 2021-00094 (La. 4/20/21), 313 So. 3d 1245, 1247.

On appeal, Amy argues she fax filed her written objection to the hearing officer's recommendation on August 21, 2023, the deadline provided for the submission of same. She further argues she mailed the original objection to the Ascension Parish Clerk of Court on the same date. According to Amy, the clerk's office received the original on Monday, August 30, 2023.[4]

---

[4] Amy provides no reference in the record in support of this contention, nor do we find evidence of this in the record before us.

4

On the record before us, it does not appear Amy complied with the requirements of La. R.S. 13:850(B). While the record contains a fax-filed copy of the objection to the hearing officer's recommendation, there is no evidence the original document, the fees for the fax filing and filing of the original document, and the transmission fee were delivered to the clerk of court within the deadline.

Subsection C of La. R.S. 13:850 provides, "[i]f the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect." Because Amy failed to establish compliance with the procedures set forth in La. R.S. 13:850(B), her August 21, 2023 facsimile filing is without force and effect. See *Petit-Blanc*, 313 So. 3d at 1247.

## CONCLUSION

For the foregoing reasons, the September 1, 2023 judgment appealed from is affirmed. Costs of this appeal are assessed to Amy Braud Gilleo.

**AFFIRMED.**

5

NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2024 CA 0173

CATHRYN LYNN GILLEO

VERSUS

AMY BRAUD GILLEO

**GUIDRY, C.J., dissents in part and assigns reasons.**

**GUIDRY, C.J., dissenting in part.**

As mentioned in the majority opinion, the protective order that is the subject of this appeal expired on May 14, 2024. Consequently, I believe the appeal should be dismissed as moot, as issuance of an opinion on the merits of this appeal is, in essence, an advisory opinion.

I recognize that in Watson v. Banguel, 21-01793 (La. 2/8/22), 332 So. 3d 632 (per curiam), the supreme court remanded the appeal of a similarly expired protective order to this court to consider the merits of the appeal, quoting the following from Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601, p. 13 (La. 10/20/98), 720 So. 2d 1186, 1196: "collateral consequences of the case or controversy give a party a concrete interest in the outcome of the litigation and ensure that the appeal is not moot."

In Watson, the supreme court expressed agreement with the dissenting opinion authored by Judge McDonald in the underlying appeal. In his dissent, Judge McDonald stated that the merits of the appeal should be considered because the protective order, which was required to be posted on the Louisiana Protective Order Registry, could be expunged if it was determined that the protective order

1

was not warranted. See La. R.S. 46:2136.2 (E). Thus, Judge McDonald pointed out, in his dissent, how the protective order could have long-lasting effects on the life of the appellant, who was a law student, as it could impact the appellant's ability to be licensed to practice law or to get a job. Watson v. Banguel, 20-0799, p. 3 (La. App. 1st Cir. 9/30/21), 2021 WL 4465839, at *3, writ granted, cause remanded, 21-01793 (La. 2/8/22), 332 So. 3d 632. Hence, specific collateral consequences that the appellant might face were identified in Watson as opposed to a general speculation that such consequences might exist. See also Mason v. Thompson, 23-0730, p. 7 n.3 (La. App. 1st Cir. 2/1/24), 2024 WL 446043, at *4 n.3, writ denied, 24-00273 (La. 4/23/24), 383 So. 3d 607 (in which the appeal was found not to be moot because the protective order also ordered the appellant to pay costs and attorney fees).

Moreover, Louisiana does not generally recognize mere stigma to be a collateral consequence for purposes of the mootness doctrine. See State v. Malone, 08-2253, pp. 3, 13-14 (La. 12/1/09), 25 So. 3d 113, 123 (observing that for criminal cases, Louisiana follows the traditional rule, rather than the liberal rule that provides that an accused's interest in clearing his name permits review even after the sentence has been satisfied) and In re C.C., 15-0140 (La. App. 1st Cir. 12/23/15), 2015 WL 9435190, at *4 n.7, writs denied, 15-2251 (La. 12/23/15), 184 So. 3d 687 and 16-0197 (La. 3/4/16), 188 So. 3d 1055, and writ not considered, 16-1304 (La. 7/12/16), 194 So.3d 1130 (observing that Louisiana does not presume that any accompanying stigma associated with a person being involuntarily committed and released unconditionally constitutes a collateral consequence exception to the mootness doctrine).

Herein, no specific "collateral consequences" of which the appellant can be said to have a "concrete interest" are identified. Accordingly, I do not believe

reliance on the collateral consequences exception to the mootness doctrine is warranted or required. I, therefore, respectfully dissent.