| xBARRY, Judge.
This appeal arises out of the judicial commitment of M.W., appellant, to the Southeast Louisiana Hospital. Appellant argues that the statutory requirements for involuntary commitment under LSA-R.S. 28:53 were not met and, therefore, the State through the Department of Health and Hospitals, Office of Mental Health (the Department), did not have standing to institute the judicial commitment under LSA-R.S. 28:54. We affirm.

FACTS

On May 2, 1993 appellant was brought to the Medical Center of Louisiana (previously Charity Hospital) pursuant to an Order for Protective Custody issued by the Orleans Coroner under LSA-R.S. 28:53.2.[1] On May *584 3, |2l993 appellant was examined by a staff psychiatrist who executed a physician’s emergency certificate (PEC) and involuntarily admitted appellant to the hospital. See LSA-R.S. 28:53.[2]
The May 3, 1993 PEC did not state, as required by LSA-R.S. 28:53(B)(2), that appellant was dangerous to himself or others or gravely disabled or that appellant was unwilling or unable to seek voluntary admission. A coroner’s emergency certificate (CEC) was not executed within 72 hours of appellant’s admission as required for continued involuntary detention. See LSA-R.S. 28:53(G)(2). On May 7, 1993 a second PEC was executed by Dr. Diane Fridley, psychiatrist, and a CEC was obtained on May 10, 1993. The appellant does not claim that the May 7 or May 10 certificate was deficient.
The Department filed a petition for judicial commitment on May 19, 1993 and appellant filed an exception of no right of action. The trial court denied the exception, ruled that the Department had standing to bring the action as a “person of legal age” under LSA-R.S. 28:54, and ordered commitment to the Southeast Louisiana Hospital.
Appellant filed an application for supervisory wiits. This Court granted the-application but denied relief, stating: “Under the facts and circumstances of this case the commitment was proper.” The Louisiana Supreme Court denied writs and appellant .filed this appeal.

\sLAW OF THE CASE

The Department argues that the decision of the trial court should be affirmed under the “law of the case” doctrine because this appeal involves the same parties and issues as the prior writ application.
Under the “law of the case” doctrine an appellate court will not reconsider its rulings of law on a subsequent appeal in the same case. The doctrine applies to all decisions of an appellate court, not just those arising from appeals. First Federal Savings & Loan of Warner Robins, Georgia v. Disiere, 542 So.2d 11, 13 (La.App. 4th Cir.), writ den. 548 So.2d 311 (La.1989); Brumfield v. Dyson, 418 So.2d 21, 23 (La.App. 1st Cir.), writ den. 422 So.2d 162 (La.1982). Nonetheless, the doctrine is discretionary and not applicable in cases of palpable former error or where application would cause manifest injustice. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (La.1971); Brumfield v. Dyson, supra at 22.
Although this appeal does not present issues or parties different from appellant’s previous writ application, review of the merits reveals a res nova issue which should be resolved by a considered opinion.

VALIDITY OF JUDICIAL COMMITMENT

The Louisiana Mental Health Law, LSA-R.S. 28:1 et seq., provides the procedure for involuntary admission, commitment and treatment of a person who suffers from mental illness or substance abuse.
A mentally ill person may be detained and admitted at a treatment facility for observation, diagnosis and treatment for up to fifteen days under an emergency certificate. LSA-R.S. 28:53(A). The PEC may be executed by any Lphysician or psychologist after examination of the person alleged to be mentally ill and a determination that the person is dangerous to self or others or gravely disabled. LSA-R.S. 28:53(B)(1). It constitutes legal authority to transport a patient to the treatment facility and permits the director of such a facility to detain the patient for diagnosis and treatment up to fifteen days. LSA-R.S. 28:53(F). Within 72 hours of detention the person must be independently examined by the coroner who shall execute a coroner’s emergency certificate (CEC). LSA-R.S. *585 28:53(G)(2). Section 53(H)[3] then provides that a patient admitted under an emergency-certificate is a proper candidate for judicial commitment under § 54 and that the director of the treatment facility or any interested party may apply for such commitment under § 54.
Section 54 provides the procedure for judicial commitment. Under that section, “(a)ny person of legal age” may file a petition for judicial commitment. The Mental Health Law defines “person of legal age” as “any person eighteen years of age or older.” LSA-R.S. 28:2(19).
Appellant argues that, because the original May 3, 1993 PEC was deficient and not timely followed by a CEC, admission by emergency certificate was illegal after May 6, 1993 and on the date the Department filed the petition for judicial commitment. Thus appellant contends the Department cannot reach § 54 through § 53(H) as “any interested party” and cannot independently | sproceed under § 54 because as a corporation it is not a “person of legal age.” Appellant does not contest the propriety of the May 7, 1993 PEC and May 10,1993 CEC, but argues that they did not cure the prior deficiency.
Three Louisiana cases decided prior to the revision of the Mental Health Law held that a judicial commitment may be validly accomplished even where ther.e was a failure to comply with the provisions of the emergency involuntary admission, since the admission and judicial commitment procedures are separate and distinct. State v. Commitment of Fletcher, 289 So.2d 572 (La.App. 3rd Cir.1974); State v. Commitment of Jackson, 289 So.2d 565 (La.App. 3rd Cir.1974); In Re Williams, 297 So.2d 458 (La.App. 3rd Cir.1974). See also Hickman v. Fletcher, 317 So.2d 219, 221 (La.App. 3rd Cir.), writ den., 321 So.2d 366 (La.1975). However, all of these eases involved petitions for judicial commitment which were filed by individual persons as opposed to the Department. Under the judicial commitment provision at that time, “(a)ny relative or in the absence of relatives, a near friend or other responsible person” could petition the district court for the judicial commitment of a patient. Thus the court did not have to decide whether petitioners had a right of action to initiate judicial commitment.
In this case, if appellant was properly detained under the May 7 PEC and May 10 CEC, the Department had a right under § 53(H) to petition the court for commitment. If not, we must consider whether the Department is a “person of legal age” entitled to independently proceed under § 54. Both issues are res nova.
The statutory provisions on admission by emergency certificate convince this Court that appellant was validly detained under the May 7 PEC and May RIO CEC despite the deficiency in the original emergency certificate. Under § 53 the initial examination and first emergency commitment certificate may be executed by the coroner and followed by a second certificate executed by a physician at the treatment facility. See LSA-R.S. 28:53(G)(3). The propriety of re-examination and re-execution of the CEC to insure its validity is implied in Section 53(G)(4). That provision addresses payment of the coroner’s examination fee and reads:
In making either the initial examination or the second examination, when the coroner or his deputy examines the person and executes an emergency certificate and a reexamination of the person and reexecution of a certificate is necessary for any reason to insure the validity of the certificate, both the first examiner and the reex-aminer shall be entitled to the fee for the sendee, unless they are one and the same. [Emphasis added.]
That provision protects the fee for the coroner’s service but also clearly envisions the possibility of re-executing the certificate. Because the initial emergency certificate may *586 be executed by either the coroner or another physician, we conclude that the statute allows reexamination of the patient and reexecution of the certificate, whether CEC or PEC, to insure its validity.
Additionally, the Mental Health Law does not prescribe exclusive conditions which must precede an emergency certificate. Section 53(B) allows any physician or psychologist to execute an emergency certificate after examination of the patient and § 53(F) states that the emergency certificate “shall constitute legal authority to transport a patient to a treatment facility and shall permit the director of such treatment facility to detain the patient for diagnosis and treatment for a period not to exceed fifteen days.... ” While the statute sets delays for detention of a person under an order of protective ^custody and the initial examination of a confined patient, there is nothing in the statute to invalidate an emergency certificate based upon expiration of the time limitations imposed on the patient’s detention. The propriety of a patient’s confinement prior to or in connection with the execution of an emergency certificate is a separate issue from the validity of that certificate, and we do not consider that issue here.
The deficiency in the appellant’s original emergency certificate was recognized within twenty-four hours of expiration of the delay for execution of the CEC, and the reexamination of appellant and re-execution of the emergency certificate were immediately completed to insure validity of the certificate. Appellant was properly examined prior to the May 7, 1993 PEC, a timely CEC was executed and the certificate constituted authority to “detain the patient for diagnosis and treatment” from that point forward. A person executing an emergency certificate must not disregard statutory requirements, but where a deficiency in the certificate is promptly recognized and a valid certificate executed, the correct certificate is not rendered invalid by the prior deficiency or by expiration of the time delays for detention. Thus, appellant’s admission to the treatment facility was valid and the Department was qualified as “any interested party” to properly apply for judicial commitment under § 54. LSA-R.S. 28:53(H).
We pretermit whether the Department may independently seek judicial commitment as a “person of legal age” under § 54. The judgment of the trial court is affirmed.

AFFIRMED.

. LSA-R.S. 28:53.2 allows a parish coroner to order that a person be taken into protective custody and transported to a treatment facility for immediate examination when a peáce officer or other credible person executes a statement under private signature specifying that, to the best of *584 his knowledge and belief, the person is mentally ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others from physical harm.

. LSA-R.S. 28:53 provides for the admission of a mentally ill person or a person suffering from substance abuse to a treatment facility for observation, diagnosis and treatment up to fifteen days under an emergency certificate executed by a physician after examination of the person.

. LSA-R.S. 28:53(H) provides in pertinent part:
H. If the patient admitted to a treatment facility pursuant to this Section is a proper candidate for judicial commitment pursuant to R.S. 28:54, the director of the treatment facility, or any interested party, may apply for such commitment under provisions of that Section. Such a patient, hospitalized on an emergency certificate, for whom a petition for judicial commitment has been filed in court may continue to be detained for a further period on order of the court.