38 So.3d 1033 (2010)
In The Matter of E.W.
No. 2009 CA 1589.
Court of Appeal of Louisiana, First Circuit.
May 7, 2010.
*1035 Pamela Toney Crawford, Mandeville, LA, for Plaintiff/Appellant, E.W.
Nancy J. Marshall, Karen P. Holland, New Orleans, LA, for Defendants/Appellees, Donnie Frederic, CEO, and Glenda Dobson, of the Louisiana Medical Center and Heart Hospital.
Before WHIPPLE, HUGHES, and WELCH. JJ.
HUGHES, J.
Appellant E.W. filed a Petition for Writ of Habeas Corpus, seeking his release from the Louisiana Medical Center and Heart Hospital (LMCHH.) This is an appeal of the trial court's judgment that both denied E.W.'s release and ordered his transfer to a psychiatric facility. For the reasons that follow, we reverse the judgment.

FACTS
In the early morning hours of June 23, 2009, plaintiff/appellant E.W. was taken by ambulance to the emergency room of LMCHH as a result of acute respiratory failure, caused by an overdose of xanax and alcohol. At 1:30 a.m. on June 23, 2009, E.W. was examined by the LMCHH emergency room physician, Dr. Nikolaos Psomas, who concluded that E.W. was suicidal. Dr. Psomas therefore executed a physician's emergency certificate (PEC), pursuant to LSA-R.S. 28:53.[1] The PEC had the effect of involuntarily admitting E.W. to the hospital for psychiatric evaluation and treatment. According to the testimony of an LMCHH employee, on June 23, 2009 at 6:30 a.m. LMCHH contacted the parish coroner's office via facsimile to notify the coroner that the PEC had been issued.[2] Then, on June 25, 2009 a call was placed by LMCHH to the coroner's office. The coroner's office instructed LMCHH to issue a second PEC if the coroner was unable to examine E.W. within 72 hours.[3] On June 26, 2009 at 1:35 a.m., the coroner had not yet examined E.W., and a second PEC was issued. LMCHH records note that additional calls were made to the coroner's office on June 26, 2009 and June 27, 2009. A third PEC was executed at 5:00 p.m. on June 28, 2009.
Deputy Coroner Dr. David Murdock, of the St. Tammany Parish Coroner's Office, *1036 examined E.W. on June 28, 2009 at 11:30 p.m. and issued a coroner's emergency certificate (CEC).[4] The CEC issued by Dr. Murdock indicated that E.W.'s date and time of admission was June 26, 2009 at 1:35 a.m. While this date and time corresponds with the date and time of the second PEC, E.W. was actually admitted to LMCHH at 1:00 a.m. on June 23, 2009.
From the time E.W. was admitted, LMCHH had been attempting to locate an available bed in a psychiatric facility in order to transfer E.W. for further treatment. On June 29, 2009 a bed was confirmed as available at Greenbrier Psychiatric Hospital (Greenbrier). According to the testimony at the hearing in this matter, due to E.W.'s objection to the validity of the CEC, Greenbrier refused to accept E.W. without a court order.
On July 1, 2009 E.W. filed a Petition for Writ of Habeas Corpus seeking his immediate release from LMCHH. A hearing was held on July 9, 2009. At the conclusion of the hearing, the trial court denied E.W.'s request for release and also ordered his transfer to Greenbrier. In its reasons for judgment, the trial court stated that although the coroner failed to examine E.W. within 72 hours of the issuance of the first PEC, the eventual issuance of the CEC, although untimely, cured any procedural deficiencies. E.W. was transferred to Greenbrier and filed an appeal of the trial court's judgment, making the following assignment of error:
The trial court erred in ruling that the issuance of the June 28, 2009 CEC cured any deficiencies in procedure and any expiration in time delays.

MOOTNESS
LMCHH argues that this appeal is moot because E.W. was released from Greenbrier on or around July 11, 2009, two days after the hearing. LMCHH asserts that because E.W.'s only request was to be released, this court can give no practical relief and the appeal is moot.
Although E.W. admits in brief that he was released from Greenbrier, he argues that this court should nevertheless render an opinion in this matter pursuant to exceptions to the mootness doctrine, including that: (1) the challenged action was too short in duration to be fully litigated before its cessation or expiration, (2) there is a reasonable expectation that he will be subject to the same action again, and (3) there is a strong public policy in favor of protecting individuals from illegal involuntary confinement contrary to the Mental Health Law.[5] Therefore, E.W. argues that this court should "take jurisdiction" of the action, despite its mootness, and decide the question of whether the trial court correctly interpreted LSA-R.S. 28:53.
It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. A "justiciable controversy" is thus distinguished from one that is hypothetical or abstract, academic, *1037 or moot. City of Hammond v. Parish of Tangipahoa, XXXX-XXXX, pp. 6-7 (La.App. 1 Cir. 3/26/08), 985 So.2d 171, 178 (citing St. Charles Gaming Company v. Riverboat Gaming Commission, 94-2679, p. 6 (La.1/17/95), 648 So.2d 1310, 1315, and St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1170-71 (La. 1987)).
An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may abate if the case becomes moot. The controversy must normally exist at every stage of the proceeding, including appellate stages. City of Hammond v. Parish of Tangipahoa, XXXX-XXXX at p. 7, 985 So.2d at 178 (citing Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601, pp. 8-9 (La.10/20/98), 720 So.2d 1186, 1193).
A case may become moot for several reasons. Some examples are that: (1) there has been a change in the law, (2) the defendant paid the monies owed, (3) the wrongful behavior has passed and is not likely to recur, or, (4) a party has died. Id.
Even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial pronouncement on the matter would be an impermissible advisory opinion. See City of Hammond v. Parish of Tangipahoa, XXXX-XXXX at pp. 7-8, 985 So.2d at 178 (citing Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 at p. 9, 720 So.2d at 1193-94). A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency which may or may not arise. American Waste & Pollution Control Company v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993). Nor is a court required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. Council of City of New Orleans v. Sewerage and Water Board of New Orleans, XXXX-XXXX, p. 5 (La.4/11/07), 953 So.2d 798, 802 (quoting St. Charles Parish School Board v. GAF Corporation, 512 So.2d at 1173).
However, exceptions to the mootness doctrine have been recognized. When a defendant has voluntarily ceased complained-of conduct, a court should consider: (1) whether there is any reasonable expectation that the alleged violation will recur; and/or (2) whether there are unresolved collateral consequences (such as an outstanding claim for compensatory or other monetary relief). See Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 at pp. 9-13, 720 So.2d at 1194-96.
While E.W. has not raised any compensatory claims or otherwise sought monetary relief in these proceedings,[6] he makes a compelling argument, and we are persuaded, *1038 that the facts of this case warrant exceptions to the general rule of mootness.
Dr. Murdock, a board-certified psychiatrist employed by the St. Tammany Parish Coroner's Office, and the Deputy Coroner charged with examining E.W., testified at the hearing. His testimony revealed that upon arrival at LMCHH he reviewed the entire medical chart. Dr. Murdock knew that: (1) he was statutorily required to examine a patient within 72 hours of the issuance of a PEC; (2) E.W. was admitted and was being held involuntarily; (3) three PEC's had been issued in regards to E.W.; and (4) the first PEC had been issued more than 72 hours prior to his arrival at LMCHH. He nevertheless proceeded to conduct the examination and issue a CEC that consequently indicated an erroneous time and date of admission.
The record indicates that at least as of June 25, 2009 the coroner's office had been contacted regarding E.W.'s admission. Several subsequent follow-up calls were made. The coroner still failed to timely conduct E.W.'s examination according to law. In fact, the record indicates that the coroner's office instructed LMCHH employees to continue issuing PEC's until the coroner arrived, in blatant disregard of the statute. We find that the actions complained of herein are indeed capable of repetition with the ability to evade review. The challenged action was too short in duration to be fully litigated before its cessation or expiration, and the blatant disregard of the statute indicates it is quite likely the complained of conduct will recur. See Schwab v. Lattimore, XXXX-XXXX (Ohio App., 2006) 166 Ohio App.3d 12, 848 N.E.2d 912. See also Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 at pp. 9-13, 720 So.2d 1194-96, citing Antieau & Rich, Modern Constitutional Law Section 15:19 (noting that if there is a good likelihood that a defendant who has ceased his illegal activity may resume it in the future, then the courts will not treat the issue as moot unless it can be shown by the defendant that there is no reasonable expectation that the wrong will be repeated, citing United States Supreme Court cases beginning in the late 1890's.)
Furthermore, a substantial public interest can also provide an exception to mootness where the question presented is of a public nature, the complained-of conduct is likely to recur, and an authoritative resolution is desirable to guide public officers. See Cinkus v. Village of Stickney Municipal Officers Electoral Bd., 228 Ill.2d 200, 319 Ill.Dec. 887, 886 N.E.2d 1011 (2008), as modified, (Apr. 23, 2008).
Here, public policy mandates that individuals be free from involuntary hospitalization contrary to law. While coroners have the power to involuntarily commit individuals for the protection of others or the individual being committed, the statutory safeguards cannot be ignored.
We conclude that due to the time factors involved, the likelihood of recurrence, and the public interest in having the commitment statutes properly enforced, the matter before us is not moot.

STANDARD OF REVIEW
Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. La. Mun. Ass'n v. State, XXXX-XXXX, p. 35 (La.1/19/05), 893 So.2d 809, 836. When a trial court commits an error of law, the reviewing court is not subject to the manifest error standard and can make an independent determination of the facts from the record on appeal. Arabie Bros. Trucking Co. v. Gautreaux, XXXX-XXXX, p. 7 (La.App. 1 Cir. 8/4/04), 880 So.2d 932, 938, writ denied, 2004-2481 (La.12/10/04), 888 So.2d 846.

*1039 LAW & DISCUSSION

Louisiana Revised Statutes 28:53 provides, in pertinent part:
A. (1) A mentally ill person or a person suffering from substance abuse may be admitted and detained at a treatment facility for observation, diagnosis, and treatment for a period not to exceed fifteen days under an emergency certificate.
(2) A person suffering from substance abuse may be detained at a treatment facility for one additional period, not to exceed fifteen days, provided that a second emergency certificate is executed. A second certificate may be executed only if and when a physician at the treatment facility and any other physician have examined the detained person within seventy-two hours prior to the termination of the initial fifteen day period and certified in writing on the second certificate that the person remains dangerous to himself or others or gravely disabled, and that his condition is likely to improve during the extended period. The director shall inform the patient of the execution of the second certificate, the length of the extended period, and the specific reasons therefor, and shall also give notice of the same to the patient's nearest relative or other designated responsible party initially notified pursuant to Subsection F.
B. (1) Any physician, psychiatric mental health nurse practitioner, or psychologist may execute an emergency certificate only after an actual examination of a person alleged to be mentally ill or suffering from substance abuse who is determined to be in need of immediate care and treatment in a treatment facility because the examining physician, psychiatric mental health nurse practitioner, or psychologist determines the person to be dangerous to self or others or to be gravely disabled. The actual examination of the person by a psychiatrist may be conducted by telemedicine utilizing video conferencing technology provided that a licensed health care professional who can adequately and accurately assist with obtaining any necessary information including but not limited to the information listed in R.S. 28:53(B)(4) shall be in the examination room with the patient at the time of the video conference. A patient examined in such a manner shall be medically cleared prior to admission to a mental health treatment facility. Failure to conduct an examination prior to the execution of the certificate will be evidence of gross negligence.
* * * *
(3) The certificate shall be dated and executed under the penalty of perjury, but need not be notarized. The certificate shall be valid for seventy-two hours and shall be delivered to the director of the treatment facility where the person is to be further evaluated and treated.
* * * *
G. (1) Upon admission of any person by emergency certificate to a treatment facility, the director of the treatment facility shall immediately notify the coroner of the parish in which the treatment facility is located of the admission, giving the following information if known:
(a) The person's name.
(b) Address.
(c) Date of birth.
(d) Name of certifying physician, psychiatric mental health nurse practitioner, or psychologist.
(e) Date and time of admission.
(f) The name and address of the treatment facility.
(2) Within seventy-two hours of admission, the person shall be independently examined by the coroner or his deputy who shall execute an emergency certificate, pursuant to Subsection B of this *1040 Section, which shall be a necessary precondition to the person's continued confinement. If the actual examination by the psychiatrist in Paragraph (1) of Subsection B of this Section is conducted by telemedicine, the seventy-two-hour independent examination by the coroner shall be conducted in person.
(3) However, in the event that the coroner has made the initial examination and executed the first emergency commitment certificate then a second examination shall be made within the seventy-two hour period set forth in this Part by any physician at the treatment facility where the person is confined.
* * * *
The statute contains checks and balances in order to insure that only those necessarily requiring treatment that they are unwilling to undergo are involuntarily confined. A person, once at a hospital or other facility, (either by order of the coroner, voluntary emergency transport, or otherwise), may be admitted and detained without their consent for a period of up to fifteen days, provided that the following things occur:
1) The person must be evaluated by a physician, psychiatric mental health nurse practitioner, or psychologist who determines that the person is in need of immediate care because the person is a danger to himself or others, or is gravely disabled;
2) A PEC must be issued;
3) A PEC, once issued, expires after 72 hours, unless, during that time, the coroner conducts an independent examination, agrees with the findings of the original PEC, and issues a CEC.
The issuance of the CEC validates the PEC and allows a person to be detained for up to fifteen days from the date of admittance.[7] Under LSA-R.S. 28:53(A)(2), a person suffering from substance abuse may be detained for one additional fifteen-day period if necessary, provided that a second PEC is issued within 72 hours of the expiration of the original fifteen-day term. In order for a person to be detained longer than provided for via emergency certificate admission, formal judicial commitment proceedings are required.
While the trial court did not deny that a breach of the statute had occurred insofar as the CEC was not issued within 72 hours of the PEC, as required by LSA-R.S. 28:53(G)(2), the trial court nevertheless denied E.W.'s release and ordered his transfer to Greenbrier, citing In re M.W., 93-1809 (La.App. 4 Cir. 6/30/94), 641 So.2d 582 as authority.[8]
*1041 We find that the language of Subsection (G)(2): shall and necessary precondition, is mandatory and not discretionary. An independent evaluation of E.W. by the parish coroner's office was required for continued confinement after 1:00 a.m. on June 26, 2009. The coroner's examination did not occur within that 72 hours. In fact, the second PEC was not even issued within that time-frame, as the second PEC was issued at 1:35 a.m. on June 26, 2009. The LMCHH doctor testified that at the time of the expiration of the first PEC, E.W. had responded very well to the treatment he received at LMCHH and had been "cleared medically" by the hospital and the pulmonologist. There was therefore no authority to detain E.W. after 1:00 a.m. on June 26, 2009.

CONCLUSION
Due to the failure of the coroner's office to issue a CEC within the time constraints mandated by statute, E.W. was unlawfully detamed as of 1:00 a.m. on June 26, 2009. We therefore reverse the trial court judgment in all respects. All costs of this appeal are to be borne by appellee, Louisiana Medical Center and Heart Hospital.
REVERSED.
NOTES
[1] The Louisiana Mental Health Law, LSA-R.S. 28:1, et seq., (more fully contained hereinbelow) provides the procedure for the involuntary admission, commitment, and treatment of a person who suffers from mental illness or substance abuse. Pursuant to LSA-R.S. 28:53(A), a mentally ill person or a person suffering from substance abuse may be detained and admitted at a treatment facility for observation, diagnosis, and treatment for up to fifteen days under an "emergency certificate" issued after examination by any physician, psychiatric mental health nurse practitioner, or psychologist and their determination that the person is in need of immediate care and treatment because the person is a danger to himself or others, or is gravely disabled.
[2] Under LSA-R.S. 28:53(G)(1), upon admission of any person by emergency certificate to a treatment facility, the director of the treatment facility shall immediately notify the coroner.
[3] Under LSA-R.S. 28:53(G)(2), the coroner's office must independently examine a patient within 72 hours of his admission.
[4] E.W. was taken to LMCHH due to an alleged suicide attempt and all three PEC's issued stated that E.W. was in need of treatment in a treatment facility because he was a danger to himself. However, the CEC executed by Dr. Murdock stated that E.W. needed treatment in a treatment facility because he was a danger to others.
[5] LSA-R.S. 28:53(G)(2).
[6] The petition for writ of habeas corpus in the trial court sought only E.W.'s release. He did not raise any tort claim for damages herein.
[7] We note that under the statute, additional provisions allow for the PEC and CEC to be transposed. In the event that the coroner makes the initial evaluation, then the second evaluation must occur within the 72 hours, and must be by a physician, psychiatric nurse practitioner, or psychiatrist. Essentially, the statute requires that two distinct examinations be made within 72 hours. This ensures only a minimal intrusion upon a person's liberty interest.
[8] The fourth circuit case of In re M.W. concerned the validity of a judicial commitment proceeding. In that case, M.W. was transported to the hospital for examination by order of the parish coroner. A PEC issued that was deficient as to its form and the subsequent CEC was not timely. Once the form deficiency was noted in the first PEC, the process was repeated and a second PEC was issued, followed by a timely CEC. M.W. challenged the deficiency of the original PEC, but made no allegations as to deficiencies in the subsequent certificates. Following the issuance of the certificates, the Department filed judicial commitment proceedings against M.W. The Fourth Circuit held that:

The deficiency in the appellant's original emergency certificate was recognized within twenty-four hours of expiration of the delay for execution of the CEC, and the re-examination of appellant and re-execution of the emergency certificate were immediately completed to insure validity of the certificate. Appellant was properly examined prior to the May 7, 1993 PEC, a timely CEC was executed and the certificate constituted authority to "detain the patient for diagnosis and treatment" from that point forward. A person executing an emergency certificate must not disregard statutory requirements, but where a deficiency in the certificate is promptly recognized and a valid certificate executed, the correct certificate is not rendered invalid by the prior deficiency or by expiration of the time delays for detention.
In re M.W., 641 So.2d at 586.
The case at hand does not concern an innocent oversight in the form of the PEC, but is reflective of a blatant disregard for statutory requirements. The coroner's office in this case appears to have made little or no attempt to adhere to the 72-hour time limit.