857 So.2d 541 (2003)
LOUISIANA ENVIRONMENTAL ACTION NETWORK and Juanita Stewart
v.
The LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
No. 2002 CA 2377.
Court of Appeal of Louisiana, First Circuit.
September 26, 2003.
*542 Adam Babich, Karla A. Raettig, New Orleans, Counsel for Plaintiffs/Appellants Louisiana Environmental Action Network and Juanita Stewart.
Donald Trahan, Baton Rouge, Counsel for Defendant/Appellee Louisiana Department of Environmental Quality.
Dwayne M. Johnson, Baton Rouge, Counsel for Intervenor/Appellee Georgia Pacific Corporation.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
DOWNING, J.
Louisiana Environmental Action Network (LEAN) and Juanita Stewart appeal a judgment dismissing their petition for judicial review of an amended air quality permit Louisiana Department of Environmental Quality (LADEQ) issued to Georgia-Pacific Corporation (GP). Within five months of issuing the amended air quality permit, and while the petition for judicial review was pending, LADEQ issued another permit pursuant to 40 C.F.R. Part 70 that incorporated the terms of the amended air quality permit. Thereafter, GP filed a motion to dismiss the petition for judicial review, alleging that the issuance of the Part 70 permit made moot the amended permit under judicial review. The trial court agreed and entered judgment dismissing the action. Concluding that the trial court did not err in finding that the Part 70 permit superseded the prior permit, we affirm the judgment of the trial court dismissing the petition for judicial review.

FACTS AND PROCEDURAL HISTORY
The record reflects that when LADEQ issued the amended permit at issue on August 20, 2001, GP's Port Hudson Operations had been operating under Louisiana state air permits since February 1988. In 1996 GP submitted a Title V air permit application pursuant to 40 C.F.R. Part 70[1] *543 and the Louisiana Administrative Code, but no Part 70 permit had been issued when LADEQ amended the Port Hudson permit or when LEAN and Ms. Stewart filed a petition for judicial review of the amended permit.
LEAN and Ms. Stewart filed timely a petition for judicial review of the August 20, 2001 permit, but before it could be heard, LADEQ finally issued the Part 70 permit. GP, an intervenor in the case filed by LEAN and Ms. Stewart against LADEQ, subsequently filed a motion to dismiss the petition for judicial review on the ground of mootness, claiming that the August 20, 2001 permit was subsumed into the Part 70 permit issued on January 25, 2002.
After hearing the motion to dismiss, the trial court entered judgment in favor of GP dismissing the petition for judicial review. The trial court subsequently denied LEAN's and Ms. Stewart's motion for new trial.
LEAN and Ms. Stewart filed this devolutive appeal raising one assignment of error. They allege that the trial court erred in finding moot the issues raised in the petition for judicial review.

DISCUSSION

MERGED SYSTEM
The primary issue for this court to decide is whether the August 20, 2001 amended permit was subsumed into the Part 70 permit issued on January 25, 2002. And we conclude that the trial court was not legally or factually erroneous in concluding that it was. Louisiana Administrative Code 33:III.507.D.1.a provides as follows:
The terms and conditions of any permit or exemption issued to a Part 70 source by the permitting authority prior to the effective date[2] of this Section shall remain in effect, unless otherwise inconsistent with the provisions of this Chapter or revised in accordance with this Chapter, until the initial permit under this Section for such Part 70 source is issued.[3] (Emphasis added.) (Footnotes added.)
*544 By the plain language of the section, the terms and conditions of existing permits remain in effect until LADEQ issues a permit under this section for a Part 70 source. It is also plain from LAC 33:III.507.E.1 that Part 70 permits are effective from the date of issuance of the permit. We agree with LADEQ's and GP's argument that the Louisiana Administrative Code has established a merged system combining the elements of state permitting with the federal requirements of Part 70.
We understand LEAN's and Ms. Stewart's argument that Part 70 does not require inclusion of many of the state terms and conditions required under the Louisiana Administrative Code and that, therefore, Louisiana's Part 70 permit is actually two permits contained in the same document. However, Louisiana defines the Part 70 permit to include state terms along with the federally required terms. LAC 33:III.507.C, 40 C.F.R. Part 70. Moreover, LAC 33:III.507.D.1 provides that existing air quality permits remain effective until a Part 70 permit is issued.
Accordingly, the trial court was not erroneous in concluding that the August 20, 2001 permit was of no force and effect once LADEQ issued the Part 70 permit on January 25, 2002.

COLLATERAL INJURY EXCEPTION
LEAN and Ms. Stewart argue, nonetheless, that the dispute at issue falls within an exception to the mootness doctrine for secondary or collateral injury that survives after the primary injury has been resolved. LEAN and Ms. Stewart argue that this exception pertains here where the challenged permit allegedly legalized release of more than 1,300 extra tons per year of volatile organic compounds into the air in an area where health protection standards are already violated, thereby further threatening their health and welfare.
We first note that this exception to the mootness doctrine appears to apply to amended or expired articles, statutes and ordinances. Cat's Meow, Inc. v. City of New Orleans Through Dep't of Finance, 98-0601, p. 9 (La.10/20/98), 720 So.2d 1186, 1194. It is therefore questionable whether the principle applies to individual permits.[4] Even so, when considering the collateral injury, "the court should consider the nature of the case and determine whether the curative changes leave unresolved collateral consequences." (Emphasis added.)
Id.
Here, LADEQ's adoption of the Part 70 permit did not leave unresolved the issues over which LEAN and Ms. Stewart complain. Under La.R.S. 30:2050.21A and 30:2050.23, they have the right to file a *545 petition for judicial review of the Part 70 permit in district court within 30 days of receipt of notice. In brief, they acknowledge they have not done so. They also have the right to file a petition with the EPA asking EPA to object to the permit. LAC 33:III.533.E. The briefs suggest they have done this.
Accordingly, even if the suggested exception to the mootness doctrine were applicable to issuance of permits, which we do not decide, the exception cannot apply where claimants have remedies available to pursue that can resolve the alleged harm. See Cat's Meow, 98-0601 at p. 9, 720 So.2d at 1194.

JUSTICIABLE CONTROVERSY
LEAN and Ms. Stewart also argue that the issues raised in their petition for judicial review are not moot because the federal EPA may revoke the Part 70 permit in whole. They further assert that neither LADEQ nor EPA is required to reissue the permit.
We decline to speculate on what the LADEQ or EPA might do because such controversy is not justiciable at this point. For the same reason, we also decline to decide here whether such action would revive the amended permit at issue. In Duplantis v. Louisiana Board of Ethics, 00-1750, p. 11 (La.3/23/01), 782 So.2d 582, 589, the Louisiana Supreme Court observed, "this Court has frequently noted that the grant of judicial power implicitly restricts our courts to review only matters which are justiciable, i.e., actual and substantial disputes with adverse parties, not hypothetical, moot, or abstract questions of law." The court continued:
We have defined a "justiciable controversy" as "an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character." This court has clearly held that "The Constitution does not vest [Louisiana Courts] with jurisdiction to render advisory opinions." (Citation omitted.)
Id.
The law allows EPA to modify, terminate or revoke a Part 70 permit and allows it to issue "only a revised permit that satisfies EPA's objection." 42 U.S.C. § 7661d(b)(3). See also LAC 33:III.533.E.4 and 40 C.F.R. § 70.8(d). We also note that LAC 33:III.507.F allows the LADEQ to permit state-only changes that are not addressed or prohibited in the federally enforced terms and conditions.
However, until EPA acts on LEAN's and Ms. Stewart's request, the matters at issue remain hypothetical and abstract and we have no jurisdiction to consider them. Duplantis, 00-1750 at p. 11, 782 So.2d at 589.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court dismissing LEAN's and Ms. Stewart's petition for judicial review. Costs are assessed equally to LEAN and Ms. Stewart.
AFFIRMED.
NOTES
[1] The regulations in 40 C.F.R. § 70 et seq. establish a comprehensive federal system for state air quality permitting pursuant to the Clean Air Act, 42 U.S.C. § 7401 et seq. The regulations provide the minimum requirements for state operating permits and the standards by which the Environmental Protection Agency administrator will oversee these permits. 40 C.F.R. § 70.1.
[2] Louisiana Administrative Code 33:III.507.D.l.d authorizes a permitting authority to revise any existing permit prior to issuance of the initial Part 70 permit. It is undisputed that GP's Port Hudson site was covered by a valid air quality permit prior to the effective date of the applicable section of the Louisiana Administrative Code, October 12, 1995. 60 FR 47296; 40 C.F.R. § 70, App. A. Accordingly, LEAN's and Ms. Stewart's argument that LAC 33:III.507.D.l.a is inapplicable due to permit modification after the effective date is without merit.
[3] Before a final Part 70 permit can be issued, the permit is subject to review by the public, other affected states and the federal EPA. LAC 33:III.519.C.1. The permit cannot be issued until 45 days have passed from the date of notice of the permit application and the EPA administrator does not object or until the administrator notifies the permitting authority that no objection will be made. LAC 33:III.533.C.1 and 2. After the EPA administrator has failed to object in writing within the 45 day period, any person has 60 more days to petition the administrator to make such objection. LAC 33:III.533.E.1. Such petition, however, does not stay the effectiveness of an issued permit if the permit was issued after the end of the 45-day review period and prior to EPA objection. LAC 33:III.533.E.2. The EPA administrator, however, has the authority to modify, terminate or revoke such permit. LAC 33:III.533.E.4. LEAN and Ms. Stewart apparently made such petition.

Note that the EPA will only review the federal conditions of a permit and do not restrict Louisiana from enforcing state conditions included in the permit. LAC 33:III.533.A. Federally enforceable requirements are contained in 40 C.F.R. § 70.6. State conditions can establish additional or more stringent requirements not inconsistent with 40 C.F.R. § 70 et seq. 40 C.F.R. § 70.1(C).
Nothing in the applicable sections of the Louisiana Administrative Code suggest that the prior state permit would be revived if the EPA did totally revoke a permit.
[4] LEAN and Ms. Stewart argue that J. Manoco, Inc. v. State, Louisiana Gaming Control Board, 98-1412 (La.App. 1 Cir. 12/28/99), 756 So.2d 430, makes manifest that the collateral consequence doctrine applies to permit applications. Mr. Manoco's collateral damage arose, however, from a change in the law that allowed East Baton Rouge Parish to end video poker gaming, and not from the license at issue. After the Louisiana Gaming Control Board revoked Mr. Manoco's video poker gaming license, the voters of East Baton Rouge Parish voted to end video poker casinos in the parish. Accordingly, Mr. Manoco could not be reissued a gaming license. He challenged the ruling revoking his gaming license, nonetheless, because if the revocation were upheld, he would suffer the direct consequence of being precluded from obtaining another gaming license for five years. La. R.S. 27:308D; Manoco, 98-1412 at p. 5, 756 So.2d at 434.