THERIOT, J.
|2Plaintiff seeks review of the trial court’s denial of her request for the issuance of a preliminary injunction. Finding that no justiciable issues remain, we dismiss this appeal as moot.
FACTS AND PROCEDURAL HISTORY
On January 9, 2014, Cassie Erin Felder declared her candidacy in the 2014 election for Representative for the United States Congress in the Sixth District of Louisiana [“the election”]. Prior to declaring her candidacy, Ms. Felder contracted with The Political Firm, LLC, [“TPF”] a political consulting firm, of which Scott Edward *1025 Flobbs and Jason Edward Hebert were members. Pursuant to a document entitled “Master Agreement” [“Agreement”] that was signed on September 18, 2013, TPF agreed to provide general campaign consulting, media consulting, media production, media placement, and direct mail production.
Pertinent to this appeal, Section 3.2 of the Agreement, entitled “Noncompetition,” provided that “[w]hile retained by [Felder], [TPF] shall not directly or indirectly engage in any other business that knowingly is in competition in any manner whatsoever with the business of [Felder].” Section 3.4 of the Agreement, entitled “Confidential Information,” prohibited each party from copying, disclosing, distributing or making use of any confidential information for its own benefit or for the benefit of a business or entity other than the other party to the Agreement, during the term of the Agreement, without prior written consent.[1] Section 4.1 of the | ^Master Agreement, entitled “Term,” provides:
The Term of this Master Agreement is for the 2014 Federal Election Cycle. [TPF] shall provide services to [Felder] pursuant to this Master Agreement immediately on the date specified upon the signing of this Master Agreement. The Term shall remain in effect until December 1, 2014, or until such time as later agreed upon in writing by both parties.
On March 17, 2014, TPF sent Felder a letter advising that she drop out of the election, citing Felder’s “half-heart[ed]” efforts and lack of a fundraising base. The letter concluded by stating that TPF was terminating the arrangement with Felder. The termination was confirmed during a telephone conference that day. Felder asserts that during this telephone conference, TPF stated that they would not work for any other candidate in the election, and that they would agree to be rehired by Felder should her campaign become solvent. TPF denies making these representations.
On May 16, 2014, Felder learned that TPF had been engaged to provide services for Garret Graves, one of Felder’s opponents in the election. On July 16, 2014, Felder brought suit, seeking damages for breach of contract pursuant to the Agreement. Specifically, Felder contended that TPF violated the non-competition clause by contracting with Graves, and that TPF violated the confidential information clause by making use of Felder’s confidential information. Felder also asserted claims for breach of duty, negligence, and unfair trade practices, and asserted a personal *1026 cause of faction against Hobbs and Hebert pursuant to La. R.S. 12:1320(D), which provides for liability to third parties of LLC members and managers who commit fraud. TPF filed an answer and reconven-tional demand, denying Felder’s claims and asserting claims for defamation.
On July 29, 2014, Felder filed a petition for preliminary and permanent injunction, requesting that TPF, Hobbs, and Hebert be enjoined from working for Felder’s opposition and from disseminating Felder’s confidential information pursuant to the non-competition clause and the confidential information clause in the Agreement. At the hearing on the petition for injunction, the trial court declined to grant the injunction pursuant to the confidential information clause because there was no evidence of dissemination of confidential information and declined to grant the injunction pursuant to the non-competition clause on the grounds that the clause only prohibited competition “[wjhile retained by the Client,” and TPF was no longer retained by Felder. Felder filed the instant appeal challenging the trial court’s ruling.
LAW AND ANALYSIS
A preliminary injunction is an interlocutory procedural device designed to preserve the status quo between the parties, pending a trial on the merits. Tobin v. Jindal, 2011-0838 (La.App. 1st Cir.2/10/12), 91 So.3d 317, 320; Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 97-2119 (La.App. 1st Cir.11/6/98), 722 So.2d 317, 322, writ denied 98-2995 (La.12/9/98), 729 So.2d 583. Although the judgment on the preliminary injunction is interlocutory, a party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612; Tobin, 91 So.3d at 320; Piazza’s Seafood World, LLC v. Odom, 2007-2191 (La.App. 1st Cir.12/23/08), 6 So.3d 820, 826.
^Generally, plaintiffs seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a prima facie showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. Tobin, 91 So.3d at 320; Silliman Private School Corp. v. Shareholder Group, 2000-0065 (La.App. 1st Cir.2/16/01), 789 So.2d 20, 22-23, writ denied, 2001-0594 (La.3/30/01), 788 So.2d 1194. The trial court enjoys considerable discretion in determining whether a preliminary injunction is warranted; thus, the trial court’s ruling will not be disturbed on appeal absent a clear abuse of discretion. Tobin, 91 So.3d at 321; Piazza’s Seafood, 6 So.3d at 826.
Where the purpose of the injunc-tive relief sought is to prevent specifically threatened future conduct, but the act sought to be enjoined has already been committed or accomplished, there can be no ground for an injunction. Tobin, 91 So.3d at 321; Silliman, 789 So.2d at 23. A court of appeal will not review a case when only injunctive relief is sought and the need for that relief has ceased to be a justiciable issue. Tobin, 91 So.3d at 321. It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. Tobin, 91 So.3d at 321; City of Hammond v. Parish of Tangipahoa, 2007-0574 (La.App. 1st Cir.3/26/08), 985 So.2d 171, 178. A “justi-ciable controversy” is one presenting an existing, actual, and substantial dispute involving the legal relations of parties who have real, adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. Tobin, 91 So.3d at 321.
*1027 According to Louisiana jurisprudence, an issue is moot when a judgment or decree on that issue has been “deprived of practical significance” or “made abstract or purely academic.” Tobin, 91 So.3d at 321; Cat’s Meow, Inc. v. City of New Orleans, Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1193. Accordingly, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. Id. Thus, when an appeal is taken from an order denying injunctive relief, and the act sought to be enjoined is accomplished pending appeal, the appeal will be dismissed as moot. To-bin, 91 So.3d at 321; Silliman, 789 So.2d at 23. If the case is moot, there is no subject matter on which the judgment of the court can operate.[2] Tobin, 91 So.3d at 321; City of Hammond, 985 So.2d at 178. Jurisdiction, once established, may abate if the case becomes moot. Tobin, 91 So.3d at 321. The controversy must normally exist at every stage of the proceeding, including the appellate stages. Id.
In Tobin v. Jindal, the plaintiffs sought a preliminary injunction to restrain the Louisiana Board of Regents from taking action relating to a proposed study of a merger of Southern University at New Orleans with the University of New Orleans. However, by the time this Court considered the appeal, the study and recommendation of the Board concerning the merger had been completed and submitted to the Legislature. Following a thorough review of the law and jurisprudence, this Court stated that when an appeal is taken from an order denying injunctive relief, and the act sought to be enjoined is accomplished pending appeal, the appeal will be dismissed as moot. This Court concluded:
17Obviously, plaintiffs can no longer be affected by the Board’s now completed study and SUNO-UNO merger recommendation that the Legislature has already considered and declined to enact. Simply stated, this appeal presents no justiciable controversy and is now moot given the legislative action declining to enact the SUNO-UNO merger as recommended by the Board, as well as the rendition of judgment by the trial court on the merits of plaintiffs’ requested permanent injunction.
Tobin, 91 So.3d at 322.
In the instant matter, it is apparent that the Term of the Agreement has expired, as both the 2014 Federal Election Cycle and December 1, 2014, have passed. Therefore, this appeal presents no justicia-ble controversy and is now moot given the expiration of the Term of the Agreement, on which the requested injunction would have been founded.
The Louisiana Supreme Court in Cat’s Meow, 720 So.2d 1186, discussed two jurisprudentially recognized exceptions to the mootness doctrine that have been crafted to prevent either party from creating a technical mootness as a sham to deprive the court of jurisdiction. When a challenged article, statute, or ordinance is amended or repealed to cure any alleged constitutional defects, a' reviewing court *1028 should consider two exceptions to the mootness doctrine to determine whether they should dismiss the case as moot: the voluntary cessation exception, under which the reviewing court should consider whether the defendant’s voluntary cessation of the alleged violation has mooted the case because the legislative body has eliminated the challenged provisions; and the collateral consequences exception, under which the reviewing court should consider the nature of the case and determine whether the curative changes leave unresolved collateral consequences. 720 So.2d at 1194.
In Cat’s Meow, the plaintiffs challenged the constitutionality of ordinances that exempted and imposed amusement taxes on certain events |sand admissions pursuant to enabling legislation. The City Council subsequently amended the ordinances at issue to delete the alleged offending exemptions. The voluntary cessation exception did not apply in Cat’s Meow because the City had repealed the challenged exemptions and replaced them with a scheme mirroring the state legislation. The Cat’s Meow Court then considered the collateral consequences exception and stated:
Thus, if a plaintiffs petition sought solely prospective relief in the form of a declaratory judgment, then the change in the law may lead to dismissal of the case. However, if, in addition to prospective relief, claims for compensatory relief are made, then a change in the law may not moot the case. Therefore, although the primary subject of a dispute has become moot, the controversy is not moot if there are collateral consequences to one of the parties. The collateral consequences of the case or controversy give a party a concrete interest in the outcome of the litigation and ensure that the appeal is not moot.
Therefore, in some circumstances, a curative amendment to a challenged article, statute, or ordinance will not moot an attack on its former provisions. Presumably, the most obvious reason for denying mootness under the collateral consequences doctrine is when damages or other monetary relief has been claimed on account of former provisions of a challenged article, statute, or ordinance. Under this condition, the repeal of legislation will not render moot a claim based on that legislation'when the repeal does not have retroactive effect.
720 So.2d at 1196 (internal citations omitted).
Thus, pursuant to the collateral consequences doctrine, the Supreme Court found that the amendments to the ordinances did not render the appeal moot. The Cat’s Meow court went on to review the trial court’s judgment, ultimately determining that the trial court erred in ruling that the challenged ordinances were unconstitutional, that the plaintiffs lacked standing, and that the trial court had prematurely determined the' constitutionality of the challenged ordinances. Cat’s Meow, 720 So.2d at 1197-2000.[3]
*1029 | ^However, the instant case does not warrant the application of the jurisprudential exceptions to the mootness doctrine discussed in Cat’s Meow. The voluntary-cessation exception applies when a defendant voluntarily stops wrongful conduct, which did not occur in this matter.
Similarly, the collateral consequences exception does not apply. This Court has previously noted that the collateral consequences exception discussed in Cat’s Meow appears to apply to amended or expired articles, statutes, and ordinances, such that it is questionable whether the principle applies to other situations, and has declined to decide whether the doctrine is applicable in other factual scenarios. Louisiana Envtl. Action Network v. Louisiana Dep’t of Envtl. Quality, 2002-2377 (La.App. 1st Cir.9/26/03), 857 So.2d 541, 544; Cat’s Meow, 720 So.2d at 1196. Thus, the jurisprudence does not support an application of the exception in the instant factual and procedural posture. However, even if the collateral consequences exception was applied in this matter, it would not afford Ms. Felder any relief. The trial court in Cat’s Meow had ruled regarding the constitutionality of the challenged ordinance and therefore interpreted the grounds under which the plaintiffs’ claim for compensatory relief were made, such that the Supreme Court saw fit to review and correct the trial court’s ruling. In contrast, in this matter, the trial court has not issued a ruling that could cause Ms. Felder to suffer any adverse collateral consequences. The trial court stated that its ruling on the petition for | ininjunction was not a ruling regarding the merits, stating that the hearing was not “with regard to the ordinary proceeding associated with the contract other than the requirement [that] in order to get an injunction the plaintiff must show a likelihood of success on the merits ... Any ruling I make today is not a comment or an opinion or judgment with regard to the suit on the merits. So I want to make that very clear.”
As the trial court has explicitly provided that its ruling on the injunction did not constitute a judgment, let alone a comment or an opinion with regard to the suit on the merits, and the matter before this Court is moot, it would be inappropriate for this Court to comment on the trial court’s preliminary statements regarding its interpretation of the contract at the hearing on the petition for injunction.
CONCLUSION
For the above and foregoing reasons, plaintiff’s appeal of the trial court’s denial of a preliminary injunction is hereby dismissed as moot. Costs of this appeal are assessed against plaintiff, Cassie Erin Felder.
APPEAL DISMISSED.

. The full text of Section 3.4 of the Master Agreement, entitled "Confidential Information," provides:
Each party acknowledges that it will have access to, be making use of, acquiring and adding to confidential business information of special and unique value including, but not limited to, trade secrets of the other party, client and prospective information, financial budgets, strategic plans, the names and backgrounds of key personnel, business materials and other information that the parties have provided each other in connection with provision of Services (collectively, the “Confidential Information”). The parties agree that neither party will, during term of this Agreement, copy, disclose, distribute or make use of any Confidential Information for its own benefit or for the benefit of a business or entity other than the other party to this Agreement without the prior written consent of such party and shall maintain the confidentiality of the Confidential Information. The provisions of the confidential treatment of the Confidential Information shall not apply to any such information which (a) is or becomes publicly known through no wrongful act of the receiving party (b) is rightly received by the receiving party from a third party; or (c) is approved for such use or disclosure by the disclosing party in writing.

. We note that the issue of subject matter jurisdiction may be raised at any time, even by the court on its own motion, and at any stage of an action. Tobin, 91 So.3d 317, n. 6; Joseph v. Ratcliff 2010-1342 (La.App. 1st Cir.3/25/11), 63 So.3d 220, 224. Thus, it is of no consequence that defendants raised the issue of mootness for the first time in their appellate brief without filing an answer to the appeal or a motion to dismiss the appeal. In the interest of judicial economy, an áppellate court may consider the possibility of mootness on its own motion and dismiss the appeal if the matter has in fact become moot. Tobin, 91 So.3d 317, n. 6.; Cory v. Cory, 43,447 (La.App.2d Cir.8/13/08), 989 So.2d 855, 859-60.

. This Court applied the collateral consequences exception in J. Manoco, Inc. v. State ex rel. Louisiana Gaming Control Bd., 98-1412 (La.App. 1st Cir. 12/28/99), 756 So.2d 430, writ denied, 2000-0248 (La.3/24/00), 758 So.2d 155, to except the appeal from mootness. Mr. Manoco's collateral damage arose, however, from a change in the law that allowed East Baton Rouge Parish to end video poker gaming. After the Louisiana Gaming Control Board revoked Mr. Manoco’s video poker gaming license, the voters of East Baton Rouge Parish voted to end video poker casinos in the parish. Accordingly, Mr. Ma-ñoco could not be reissued a gaming license. He challenged the ruling revoking his gaming license, nonetheless, because if the revocation were upheld, he would suffer the direct consequence of being precluded from obtaining another gaming license for five years. La. R.S. 27:308 D, repealed by 2012 La. Acts, No. 161, *1029 § 3, effective August 1, 2012; Manoco, 756 So.2d at 434.